### JACKSON *v.* BEAVERS, chief of police, *et al.*

1. The provisions of section 3 of the act of August 10, 1921 (Acts 1921, p. 243), which prohibit professional bondsmen, by themselves or agents, from soliciting business as such bondsmen, are not void for lack of clearness and definiteness, in that the act fails to state what acts and things will constitute agency on the part of their employees, and to define the meaning of the language, " soliciting business by such bondsmen.'"

2. This act is not void because it fails to provide a penalty for violations of its provisions; it providing that such violations shall be punished under the Penal Code, § 1065, which prescribes the punishment for all misdemeanors, except where otherwise provided.

3. This act was not repealed by the general tax act of 1921, which went into effect on January 1, 1922.

4. This act is not unconstitutional because it violates art. 3, sec. 7, par. 8, .of the constitution of this State, for any reasons assigned. If the body of the act contains any matters different from what is expressed in the title, they can be rejected, as the remainder of the act sets forth a complete scheme, which is capable of enforcement.

5. This act is not unconstitutional because in conflict with art. 1, sec. 5, par. 2, or with art. 1, sec. 1, par. 2, of the State constitution, or with the due-process clauses of the State and Federal constitutions; nor is it unconstitutional because its provisions are arbitrary and unreasonable.

6. The chancellor did not err in refusing to grant an interlocutory injunction.

No. 3560.    JULY 14, 1923.

Petition for injunction. Before Judge Bell. Fulton superior court. October 26, 1922.

*R. R. Jackson* and *John F. Echols,* for plaintiff.

*James L. Mayson, Jesse M. Wood,* and *S. C. Crane,* for defendants.

HINES, J. P. P. Jackson, a licensed professional bondsman, doing business as such in the City of Atlanta and in the County of

Fulton, brought his bill against the chief of police of said city and his assistant, to enjoin them from making cases against him and his agents for violations of the provisions of the act of the legislature of Aug. 10, 1921, entitled "An act regulating the signing of criminal bonds by professional bondsmen, and for other purposes." Acts 1921, p. 243. Plaintiff attacks said act upon the grounds: (1) that portions of it are so uncertain and indefinite as to be incapable of enforcement; (2) that it fixes no penalty for the violation of its provisions; (3) that said act was repealed by the general tax act of August 15, 1921, effective January 1, 1922; (4) that the body of said act contains matter different from that expressed in its title; and (5) that said act unconstitutionally deprives him of his right to conduct said business of signing criminal bonds for compensation.

1. Are portions of said act so uncertain and indefinite as to render it incapable of enforcement, and for this reason void? It is alleged by plaintiff that section 3 of said act is void for this reason. This section in part declares "That professional bondsmen shall not by themselves, or himself, agents or employees, solicit business as such bondsmen, or shall either one of them lounge about or around prisons or places where prisoners are confined, or the courts, for the purpose of engaging in or soliciting business as such bondsmen." Plaintiff insists that the above part of said section is void for lack of clearness and definiteness, because it does not state or define what acts and doings of himself or his employees would constitute agency on the part of such employees. To state this proposition is to refute it. Failure in an act, which prohibits one or his agents from doing a given thing, to define what constitutes agency, does not render such act void for lack of clearness or definiteness. The law of agency would easily solve any perplexities which one might encounter in construing this section; and such resort would dispel any darkness which might envelop this part of this section.

Again, it is urged that this statute fails to define what is meant by the language, "solicit business as such bondsmen," and that such failure renders this section of said act so indefinite and uncertain as to make it void. This contention is without merit. Dictionaries, lay and legal, define the meaning of the word "solicit," and this act itself defines the meaning of the business of such

bondsmen. Thus the meaning of this language can be rendered clear. So we do not think that the above portion of section 3 of this act is void for uncertainty or indefiniteness.

2. Plaintiff asserts that this act can not be enforced, because it provides no penalty for violations of its provisions, and that for this reason it is incapable of enforcement, and is void. Section 8 of this act declares: " That the violation of the preceding sections shall be punished as for a misdemeanor, under Code of Georgia, volume 3, section 1065, of 1911." The reasoning is, that, as there is no volume 3 of the Code of 1911, there is no penalty for infractions of this law. This logic is unsound. The Code of 1910 was published in two volumes and labeled and designated as Volume 1 and Volume 2 of the Code of 1911. Volume 2 of that Code is the Penal Code of this State, and deals with crimes and their punishment. In the Penal Code is section 1065, which fixes the punishment for misdemeanors, " except where otherwise provided." In arriving at the meaning of the legislature, and thus at the true construction of this section of this act, the code number may be rejected under the maxim *falsa demonstratio non nocet. Johnson* v. *McKay,* 119 *Ga.* 196 (45 S. E. 992, 100 Am. St. R. 166). By doing this, this act provides punishment for those breaking its provisions. But if this is not the right meaning of this section of this act, and if this act does not provide punishment for infraction of its provisions, as contended by plaintiff, then the Penal Code, § 1065, does provide such punishment. By its terms this section provides punishment for every crime declared to be a misdemeanor, except where punishment therefor is otherwise provided. So it follows, that, if section 8 of this act does not provide such punishment, this section of the Code does fix a punishment for violations of its provisions. This statute is easily distinguishable from the act dealt with in *Hayes* v. *State,* 11 *Ga. App.* 371 (75 S. E. 523); *Jones* v. *State,* 151 *Ga.* 502 (107 S. E. 765); *Howard* v. *State,* 151 *Ga.* 845 (108 S. E. 513).

3. In his petition the plaintiff asserts that this act was repealed by the general tax act of August 15, 1921 (Acts 1921, p. 38), made effective January 1, 1922. It is contended by plaintiff that paragraph 27 of section 2 of the tax act imposed an occupation tax of $200 on " bond makers," the effect of which was to confer upon one paying the same the right to engage in this business;

that the tax act repealed all laws in conflict therewith, and that thus the tax act impliedly repealed the statute which we have under consideration. This logic is unsound. The imposition of a business tax upon the occupation of plaintiff in this tax act, although such act repeals conflicting laws, did not have the effect of repealing by implication the statute regulating his business.

4. The plaintiff next attacks this act as unconstitutional on the ground that it is in conflict with article 3, section 7, paragraph 8, of the constitution of this State, which declares that " No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof." Civil Code (1910), § 6437. It is insisted that the provisions of section 3, which prohibits arresting officers, keepers or turnkeys of prisons from suggesting to or advising in any manner whatever any prisoner in custody of the law the employment of the services of any professional bondsman to sign criminal bonds, or having any attorney at law lounging around or about any prison to engage in solicitation of criminal cases; which prohibits any attorney from paying any part of fees collected as attorney's fees to any arresting officer arresting or prosecuting the case in which such fees were paid; which prohibits any attorney from paying to any professional bondsman any greater sum out of fees collected in cases in which the fees were paid than said act provides for; which prohibits any keeper, turnkey, or employee of prisons where prisoners are confined from advising or naming for employment an attorney and from receiving any sum of money paid as fees or otherwise to an attorney in cases against prisoners confined in a prison they may be connected with in any capacity, refer to matters different from those expressed in the caption of this act. It is unnecessary, under the view we take of this case, to determine whether these provisions are unconstitutional because containing matter different from what is expressed in the caption. If these provisions are unconstitutional, they do not affect the remainder of the act. *Mayor &c. of Savannah* v. *State,* 4 *Ga.* 26; *Goldsmith* v. *Rome Railroad Co.,* 62 *Ga.* 473; *Howell* v. *State,* 71 *Ga.* 224 (51 Am. R. 259) ; *Hawkins* v. *State,* 146 *Ga.* 134 (90 S. E. 968).

5. But the main contention of the plaintiff, and the one most strongly stressed, is that this act is unconstitutional. The at-

tacks upon its constitutionality are many. It is alleged that this statute violates paragraph 2, section 5, article 1 of the constitution of this State, which is as follows: "The enumeration of rights herein contained as a part of this constitution shall not be construed to deny to the people any inherent rights which they may have hitherto enjoyed." It is claimed that one of the inherent rights of the citizen is to contract, that this right entitles a person to receive for services rendered such price as may be agreed upon between him and another, and that this right is infringed by this statute which limits the amount which a professional bondsman can charge a defendant in a criminal case for going on his bond. Plaintiff further insists that this act violates paragraph 2, section 1, article 1 of the constitution of this State, which declares that "Protection to person and property is the paramount duty of government, and shall be impartial and complete." Furthermore, plaintiff contends that this act violates the due-process clauses of the State and Federal constitutions.

We shall deal with these constitutional attacks upon this act in mass. The regulation of this business falls within the police power of the State. This power is very broad. It has limits and boundaries, but they are far-flung. Under this power, laws may be passed regulating common occupations which, from their nature, afford opportunity for fraud and imposition. 12 C. J. 920, § 429 ; *Bazemore* v. *State,* 121 *Ga.* 619 (49 S. E. 701). "A large discretion is necessarily vested in the legislature to determine (*a*) what the interests of the public require, and (*b*) what measures are necessary for the protection of such interests." *Mack* v. *Westbrook,* 148 *Ga.* 690 (98 S. E. 339). The business of professional bondsmen affords peculiar opportunity for fraud and imposition upon the persons whom they serve. Besides, such business may be so conducted as to seriously interfere with the fair and proper administration of the criminal laws. The unscrupulous may devise means' and methods for the escape of violators of the penal statutes. They may use improper and illegal means to secure the acquittal of their clients. For these and other reasons which could be given, this business comes within the police power of the State. Under this power the right to contract is not unlimited, but is subject to regulation. *City of Dawson* v. *Dawson Tel. Co.,* 137 *Ga.* 62 (72 S. E. 508) ; *Railroad Com.* v. *L. & N. R. Co.,* 140

*Ga.* 817, 80 S. E. 327, L. R. A. 1915E, 902, Ann. Cas. 1915A, 1018) ; *Union Dry Goods Co.* v. *Ga. Pub. Serv. Corp.,* 142 *Ga.* 841 (83 S. E. 946, L. R. A. 1916E, 358) ; s. c. 248 U. S. 372 (39 Sup. Ct. 117, 63 L. ed. 309, 9 A. L. R. 1420). The State can fix the interest rate and regulate the business of lending money. *King* v. *State,* 136 *Ga.* 709 (71 S. E. 1093) ; Griffith v. Connecticut, 218 U. S. 563 (31 Sup. Ct. 132, 54 L. ed. 1151). In the exercise of this power it has been customary in England, and in this country from its early colonization, to regulate ferries, common carriers, hackmen, bakers, millers, wharfingers, innkeepers, and other callings in which persons devote their property to public use, and in so doing to fix the charges for services rendered, accommodations furnished, and articles sold. Munn v. Illinois, 94 U. S. 113 (24 L. ed. 77). One of our earliest statutes regulates millers and fixes as their toll one-eighth part of the grain they grind. Civil Code (1910), § 1877. So in cases of emergency statutes permitting the fixing of rents at rates different from the contracted rates have been upheld. Block v. Hirsh, 256 U. S. 135 (41 Sup. Ct. 458, 65 L. ed. 865, 16 A. L. R. 165) ; Marcus Brown Co. v. Feldman, 256 U. S. 170 (41 Sup. Ct. 465, 65 L. ed. 877). Then why can not charges of professional bondsmen be fixed by statute, if they are reasonable and just?

Under the police power the height of buildings in a city may be regulated. Welch v. Swasey, 214 U. S. 91 (29 Sup. 567, 53 L. ed. 923). Bill-boards in cities may be regulated. St. Louis Adv. Co. v. St. Louis, 249 U. S. 269 (39 Sup. Ct. 274, 63 L. ed. 599). Watersheds in the country may be kept clear. Perley v. North Carolina, 249 U. S. 510 (39 Sup. Ct. 357, 63 L. ed. 735). An ordinance making it unlawful to conduct a livery-stable in certain defined portions of a city has been upheld as a valid exercise of the police power. Reinman v. Little Rock, 237 U. S. 171 (35 Sup. Ct. 511, 59 L. ed. 900). Cases might be multiplied to further illustrate the sweeping scope of what is termed the police power, but we deem this unnecessary. Authorities cited demonstrate that the State was acting well within the limits of this power in passing the statute we are considering. It is true that the exercise of this power must not be arbitrary and unreasonable. We do not think that the provisions of the act prohibiting the soliciting of this business at the places mentioned in the act arbitrary and unreason-

able. It has been held that drumming for hotels, bathhouses, physicians, or similar enterprises may be prohibited in the exercise of the police power, to promote public convenience and the general welfare. Moore *v.* Campbell, 85 Ark. 581 (109 S. W. 544); Williams *v.* Arkansas, 85 Ark. 464 (108 S. W. 838, 122 Am. St. R. 47, 26 L. R. A. (N. S.) 482); s. c. 217 U. S. 79 (30 Sup. Ct. 493, 54 L. ed. 673, 18 Ann. Cas. 865); Taylor *v.* Moore, 99 Ark. 415 (138 S. W. 634). We have a statute which prohibits attorneys from soliciting business. Penal Code, § 331. Then why can not professional bondsmen, who undertake to exercise an inferior function in the administration of law, be prohibited from soliciting business in places and under circumstances mentioned in this act? We do not think the provisions of the statute inhibiting the soliciting of business by them arbitrary and unreasonable. So we are of the opinion that this act is not unconstitutional for any of the reasons assigned.

*Judgment affirmed. All the Justices concur.*

BECK, P. J., concurs specially.