24727, 24728. DEPARTMENT OF AGRICULTURE v. QUALITY FOOD PRODUCTS, INC.; and vice versa.

ARGUED JULY 9, 1968—DECIDED SEPTEMBER 24, 1968.

*Arthur K. Bolton, Attorney General, G. Ernest Tidwell, Executive Assistant Attorney General, Alfred L. Evans, Jr., Larry D. Ruskaup, Assistant Attorneys General, Joel Feldman, Deputy Assistant Attorney General, A. Joseph Nardone, Jr.,* for appellant.

*R. Larry Turner, E. Lee Redfern,* for appellee.

FRANKUM, Justice. The sole basic question presented by the appeal and the cross appeal in this case is whether the Commissioner of Agriculture of this State may lawfully promulgate and enforce a rule forbidding the sale within this State of so-called "filled milk" products. Purporting to act pursuant to the provisions of Ga. L. 1951, p. 444; Ga. L. 1956, p. 195; Ga. L. 1956, p. 611; Ga. L. 1961, p. 501; and Ga. L. 1965, p. 498, the Commissioner of Agriculture promulgated chapter 40-2-1 of the Rules of the Georgia Department of Agriculture respecting milk and milk products. The rule here in question, contained in Paragraph 46 of Rule 40-2-1.01 of the rules above referred to, is as follows:

"(46) 'Restrictions of Filled Milk Products.' The term 'Filled Milk' means any milk, cream or skimmed milk, whether or not whipped, condensed, evaporated, concentrated, powdered, dried, or desiccated, to which has been added, or which has been blended or compounded with any fat or oil other than milk fat, so that the resulting product is in imitation or semblance of milk, cream or skimmed milk, whether or not whipped, condensed, evaporated, concentrated, powdered, dried or desiccated. This definition shall not include any distinctive proprietary food compound not readily mistaken in taste for milk or cream: Provided, that such compound (a) is prepared and designed for feeding infants and young children and customarily used on the order of a physician; (b) is packed in individual cans containing not more than sixteen and one-half ounces and bearing a label in bold type that the content is to be used only for said purpose; (c) is shipped in intra-state commerce exclusively to physicians, wholesale and retail druggists, orphanages, child welfare associations, hospitals and similar institutions and generally disposed of by them. The manufacturing for sale, or for shipment, or for delivery for shipment within the bounds of the State of Georgia of filled milk as herein described and defined is hereby prohibited. It is declared to be an adulterated article of food, and its sale constitutes a fraud upon the public, and its use may be injurious to the public health. It shall be unlawful for any dealer, distributor, or public eating establishment to sell, or otherwise dispose of, in the State of Georgia, as dairy products

any imitations of or substitutes for dairy products which offering of said imitation of or substitute for dairy products is fraudulent and unfair to the consuming public, whether or not said imitation of or substitute for said dairy products is so labeled, or to mix such imitation of or substitute for dairy products with a dairy product for sale or for other disposition in the State."

The plaintiff in the trial court, Quality Food Products, Inc., filed its complaint naming therein as defendants Lester Maddox, Governor of the State of Georgia, and Phil Campbell, Commissioner of the Department of Agriculture of the State of Georgia. As finally amended and redrafted, the complaint named the Georgia Department of Agriculture as the sole party defendant, and sought declaratory and injunctive relief pursuant to the provisions of the Georgia Administrative Procedure Act (Ga. L. 1964, p. 338 et seq., as amended by Ga. L. 1965, p. 283 et seq.), and the Declaratory Judgments Acts (Ga. L. 1945, p. 137 et seq., and Ga. L. 1959, p. 236 et seq.). In the action the complainant sought to enjoin the Department of Agriculture, its officers and agents, from enforcing against it the "filled milk" rule above quoted, contending that Ga. L. 1929, pp. 280, 287, and Ga. L. 1961, p. 501 et seq., are unconstitutional and that the aforesaid "filled milk" regulation adopted pursuant thereto is also unconstitutional in that the said Acts and the rule deprive the complainant of its property without due process of law. After a hearing, the trial court passed an order the material parts of which are as follows: "The court finds as a matter of fact that the plaintiff's products are in no manner harmful or deleterious to the public and under these circumstances the court finds that the plaintiff's products do not come within the prohibition set forth in the statutes and regulations hereinafter referred to and set out in the stipulations of the parties as long as plaintiff's products are marketed and offered for sale in a manner which does not deceive or mislead the consuming public. The court is of further opinion that as long as plaintiff markets its products in containers marked, 'Pure-Pak' containers, that the public will not be misled or deceived into believing the contents of said containers is milk. The label on said carton or container shall make no reference express or implied, with respect to said product

being milk or sold in semblance thereof. It is ordered, adjudged and decreed that the defendant is hereby restrained and enjoined from enforcing Ga. L. 1929, p. 280 et seq., p. 287 and as amended or to take any legal action against the plaintiff or its licensees which would prevent the manufacturing, distributing, selling or offering for sale [of] its products in the State of Georgia under the name and style of 'Farmer's Daughter' by reason of the fact that said product is an imitation of milk or by reason of the fact [that the] containers or cartons in which the product is offered for sale will mislead or deceive the public."

From the aforesaid order the Department of Agriculture appealed, and the plaintiff has filed a cross appeal contending in its cross enumerations of error that the trial court erred in failing and refusing to declare the 1929 Act unconstitutional and in failing to declare Rule 40-2-1-.01 (46) of the Rules and Regulations of the Georgia Department of Agriculture unconstitutional, in that said Act and the rule deprive the plaintiff of its property without due process of law. However, it is unnecessary to decide the constitutional question thus presented inasmuch as the order appealed from may be sustained upon other principles. While, as published, Chapter 40-2-1 of the Rules and Regulations of the Georgia Department of Agriculture relating to milk and milk products does not cite the 1929 Act as authority for their promulgation, the Department in its argument before this court relies upon Section 10 of that Act (Ga. L. 1929, pp. 280, 287), codified as Sec. 42-511 of the Code as constituting authority for the rule in question. *Code* § 42-511 reads as follows: "It shall be unlawful to sell, keep for sale, or offer for sale any *condensed or evaporated milk, concentrated milk, sweetened condensed milk, sweetened evaporated milk, sweetened concentrated milk, sweetened evaporated skimmed milk, or any of the fluid derivatives of any of them,* to which shall have been added any fat or oil other than milk fat, either under the name of said products or articles or the derivatives thereof, or under any fictitious or trade name whatsoever." (Emphasis supplied.) The Department of Agriculture also relies upon certain provisions of the Act approved April 5, 1961 (Ga. L. 1961, pp. 501-514) as granting authority for the promulgation of the rule in question. That Act was an

Act regulating the manufacture, sale, and distribution of milk and milk products within the State of Georgia. It undertakes to define certain milk and milk products including raw cow's milk, Grade A whole milk, Grade A pasteurized milk, raw whole milk for manufacturing purposes, manufactured milk products, and ungraded milk. It sets forth the sanitary requirements under which Grade A raw milk and Grade A pasteurized whole milk and other grades of milk and milk products must be produced and it authorizes the Commissioner of Agriculture to prescribe by rules and regulations for the testing of dairy herds to assure that only milk from healthy cows shall be marketed within the state and to provide for the minimum requirements for sanitation in milking barns, dairies, and other places where milk for human consumption is handled and it authorizes the Commissioner of Agriculture to promulgate rules to "provide the label requirements in accordance with the laws of this State" and to make such other reasonable rules and regulations and requirements "adequate to protect the consuming public against the contamination of such milk and milk products." That Act also provides that the Commissioner shall define Grade A skim milk, Grade A cream, Grade A buttermilk, Grade A chocolate milk, Grade A modified solids milk, and other Grade A milk products and milk beverages both raw and pasteurized and shall define and set standards for all milk and milk products. Section 6 of the Act provides: "(a) milk and milk products in compliance with the provisions of this Act and the rules and regulations prescribed hereunder, may be sold, offered for sale, or delivered to the consuming public for the purpose of human consumption, provided the container in which the milk or milk product is sold, offered for sale or delivered has affixed thereto or printed thereon labels approved by the Commissioner. No milk or milk product may be sold, offered for sale or delivered for the purpose of human consumption that is not in compliance with the provisions of this Act or the standards or rules and regulations prescribed hereunder. (b) The Commissioner is hereby vested with the responsibility, duty and authority to promulgate rules and regulations to provide for the labeling of milk and milk products in such manner so as to indicate that the milk or milk product complies

with the provisions of this Act, and the rules and regulations promulgated hereunder." Section 9 provides: "The Commissioner is charged with the responsibility of enforcing the provisions of this Act, and shall be authorized and empowered to make all reasonable rules and regulations with uniform application which are necessary and proper to enforce the purpose and intention of this Act."

No other statutory provisions which could in any way bear upon the power and authority of the Commissioner of Agriculture to promulgate rules and regulations respecting the production, distribution, and marketing of milk and milk products have been called to our attention. In our opinion there is nothing contained in the portions of the Acts referred to which in any way prohibit the sale or offering for sale of the product which the plaintiff seeks to produce and market in this State. The evidence shows that the product which the defendant seeks to prohibit the plaintiff from marketing in this State consists of "water, non-fat dry milk solids, coconut oil, 76 degree viscosity, vegetable starch, carotene, corn syrup solids, sodium caseinate, mono-di glyceride," and vitamins A and D. The product is 86% water and by a process using "a catalytic emulsifying secret base formula" the water is combined with vegetable oil, dry milk solids and organic chemicals and the other products contained therein into a product to be marketed as an imitation milk. It contains no deleterious or harmful matter and its appearance, taste, and smell are identical with milk. The plaintiff proposes to market the product in Pure-Pak 1/2 gallon liquid cartons labeled either "Farmer's Daughter, Hi-Protein Drink; not a dairy product; contains no butterfat; pasteurized-homogenized," or "Farmer's Daughter, Hi-Protein Drink, not a dairy product, pasteurized, homogenized," or "Farmer's Daughter, Imitation Milk, Hi-Protein Drink, pasteurized, homogenized." So far as the evidence reveals, the product does not contain any condensed milk, evaporated milk, concentrated milk, or evaporated skimmed milk, sweetened or unsweetened, or any of the fluid derivatives of any of them. It therefore does not come within any of the prohibitions set forth in *Code* § 42-511. The evidence does not reveal that "non-fat dry milk solids," which is

the only milk contained in the complainant's product, is the same thing as one or more of the kinds of milk set forth in the Code section, and we cannot take judicial cognizance that this ingredient is the same as one of those listed there.

The evidence shows that the sole basis upon which the defendant seeks by the contested regulation to prohibit the sale of plaintiff's product is that its marketing in any container would be deceptive to the buying public in that it is a product in semblance of milk and would likely be mistakenly purchased by persons in place of milk and that such purchasers would be deprived thereby from procuring the butterfat content normally found in whole milk. It is indisputable, of course, that the prevention of fraud and deception is a legitimate purpose to be served by the exercise of the police power of the State and that to this end the State may regulate the most necessary and common occupations when from their nature they offer peculiar opportunities for the imposition of fraud. *Bazemore v. State,* 121 Ga. 619 (1), 621 (49 SE 701); *Jackson v. Beavers,* 156 Ga. 71, 75 (5) (118 SE 751).

But we are not concerned here with whether the legislature may prohibit the sale of an otherwise wholesome article of food. Nor are we concerned with whether the legislature may lawfully delegate to the Commissioner of Agriculture or to the Department of Agriculture the authority to accomplish the same results by promulgating a rule prohibiting the sale of such an article. Nothing contained in the 1961 Act, relied upon by the defendant, authorizes the Commissioner to do more by rule and regulation than to define and set standards for all milk and milk products, and to approve labels to be affixed to or printed upon the containers in which such products are offered for sale. The obvious purpose of that Act is to fix standards of sanitation in the production, handling, distribution and marketing of milk and milk products, to protect the health of the consumers of milk and milk products, and to prevent fraud and deception in the marketing of such products by assuring that labels affixed to or printed on containers truthfully reveal the exact nature of the product contained therein. Nothing in the 1961 Act or in any of the other Acts enumerated in the preamble to Chapter

40-2-1 of the Rules of the Georgia Department of Agriculture authorizes the prohibition contained in Rule 40-2-1-.01 (46).

We, therefore, conclude, as did the trial judge, that the purposes of the 1961 Act, above referred to may be effectually accomplished by regulations with respect to packaging, labeling and branding of the products and that, in the absence of valid statutory authorization, neither the Commissioner nor the Department of Agriculture has authority to promulgate a rule absolutely prohibiting the sale of a harmless and nutritious food product merely because it resembles another product already on the market, and the trial court did not err in enjoining the defendant from prohibiting the manufacture, distribution, and sale of the plaintiff's product in the State of Georgia.

However, the judgment should be so modified as to allow the Department of Agriculture, acting by and through the Commissioner, to make and enforce such reasonable rules and regulations respecting the packaging, labeling and branding of the plaintiff's product and the marketing thereof so as to prevent deception of prospective purchasers as to the true nature of the product, and direction is given that the judgment be so modified.

*Judgment affirmed with direction on the main appeal; cross appeal dismissed. All the Justices concur.*