LLOYD M. ALLEN, AS COMMISSIONER OF DEPARTMENT OF INSURANCE, STATE OF INDIANA *v*. ANTHONY PAVACH AND DAMON S. ROACH.

[No. 574S107. Filed October 7, 1975. Rehearing denied December 4, 1975.]

*Theodore L. Sendak,* Attorney General, *Arthur M. Small,* Deputy Attorney General, for appellant.

*Duge Butler, Jr., Butler, Brown & Hahn,* of Indianapolis, for appellees.

GIVAN, C.J.—This appeal arises from Appellees' action for injunctive and declaratory relief in Marion Superior Court. This Court entertains jurisdiction pursuant to Ind. R. Ap. P. 4(A)(8), as the trial court found Acts 1973, P.L. 326, §§ 4 and 5, to be unconstitutional.

The facts were stipulated as follows:

1. The plaintiff is a resident of Marion County, State of Indiana, and is a Professional Bail Bondsman.

2. The defendant is the duly appointed Commissioner of the Department of Insurance of the State of Indiana.

3. The plaintiff is registered and has qualified as a Professional Bondsman, pursuant to Burns 9-3701 *et seq.,* with the Department of Insurance, State of Indiana.

4. The First Regular Session of the 98th General Assembly of the State of Indiana passed Public Law 326, which statute amends Burns 9-3701.

5. The plaintiff's license to operate as a professional bondsman expired on September 30, 1973, but all such licenses were extended by the Insurance Commissioner to date of October 8, 1973, which date falls on a holiday.

The issues presented by the complaint are:

Whether Public Law 326, Acts of 1973, has deprived the plaintiff of his right to due course of law under the Indiana Constitution, Article 1, Sec. 12, his right to equal protection under the Indiana Constitution Art. 1, Sec. 23, and his right to due process of law under the Constitution of the United States, 14th Amendment, Sec. 1, by:

a) Arbitrarily establishing two classes (individual-insurance company) to sell bail bonds;
b) Arbitrarily establishing different standards for the two classes established which must be met before they may sell bail bonds;
c) Arbitrarily establishing maximum amount of bail bonds that may be written by an individual professional bail bondsman, and placing no limit upon individuals selling bail bonds for an insurance corporation;
d) Arbitrarily requiring a $100,000.00 cash bond for an individual professional bail bondsman and providing no cash bond for individual salesmen employed by an insurance company.

Following argument and submission of briefs to the trial court, the judge made the following conclusions of law:

"1. The law is with the plaintiffs.

"2. Sections 4 and 5 of Public Law 326 are discriminatory in their effect on professional bondsmen.

"3. The discrimination established by Sections 4 and 5 of Public Law 326 is arbitrary, unreasonable, and of an unusual nature; it therefore is discriminatory in fact and in law, and a [sic] as applied to plaintiffs is therefore unconstitutional. It is not based on a substantial difference of situation or circumstances indicating any necessity for such determination.

"4. Because of the constitutional violations, Sections 4 and 5 of Public Law 326 are expressly found to be unconstitutional and therefore void."

Appellant raises one issue for review: Whether the trial court erred in finding §§ 4 and 5 of P.L. 326, Acts of 1973, to be arbitrary and unreasonable and therefore unconstitutional.

Appellees admit that the bail bond business, because of its close relation to the criminal justice system, is a proper subject for legislative regulation. In fact, other jurisdictions have uniformly so held. See, *e.g.*, *Jackson* v. *Beavers*, (1923) 156 Ga. 71, 118 S.E. 751; *McDonough* v. *Goodcell*, (1939) 13 Cal.2d 741, 91 P.2d 1035. See also Annot., 13 A.L.R.3d 618 (1967).

At the outset, it should be noted that a corporation is a "person" within the meaning of the equal protection and due process provisions of the United States Constitution. 18 Am.Jur.2d *Corporations*, § 21.

The equal protection clauses of the United States and Indiana Constitutions do not prevent the legislature from indulging in classifications which treat one group differently from another. The test is whether the difference in treatment is an invidious discrimination. *Lehnhausen* v. *Lake Shore Auto Parts Co.*, (1973) 410 U.S. 356, 35 L.Ed.2d 351, 93 S.Ct. 1001. Similarly, the due process clause protects only against invidious discrimination. *Ferguson* v. *Skrupa*, (1963) 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93. Generally, if a classification has a rational or reasonable basis, it will be sustained. *Graham* v. *Richardson*, (1971) 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534; *State ex rel. Miller* v. *McDonald*, (1972) 260 Ind. 565, 297 N.E.2d 826, 37 Ind. Dec. 332. Corporations may be classified and treated differently when the classifications are based upon distinctions having a fair and reasonable relation to the purpose of the legislation. *Atchison, T. & S.F. Ry. Co.* v. *Vosburg*, (1915) 238 U.S. 56, 35 S.Ct. 675, 59 L.Ed. 1199. Further,

the enactment is presumed to be valid, the burden resting upon the party challenging its validity to overcome the presumption. *Graham, supra; State ex rel. Miller, supra.*

Acts 1973, P.L. 326, § 4, amending the deposit requirements of professional bondsmen, reads in part, as follows:

> "SECTION 4. IC 1971, 35-4-5-34 is amended to read as follows: Sec. 34. Professional bondsmen and property bondsmen shall, before writing cash, property or security bail bonds deposit with the commissioner cash, bearer bonds or other negotiable securities in the same manner as required of domestic insurance companies, an amount determined by the commissioner not less than having a value of at least one hundred thousand dollars ($100,000) in order to obtain a license to engage in the bail bond business, out of which the commissioner shall satisfy judgment on all forfeitures which have not been paid. The deposit shall be subject to all laws, rules and regulations as deposits by domestic insurance companies."

IC 35-4-5-35 (Burns 1975 Repl.) pertaining to the insurer's deposit, reads as follows:

> "Deposit by insurers with commissioner—Amount.—All insurers must deposit with the commissioner cash, bearer bonds or other negotiable securities having a value of at least seventy-five thousand dollars [$75,000], in order to obtain a license to engage in the bail bond business, out of which the commissioner shall satisfy judgment on all forfeitures which have not been paid. Such deposit shall be subject to all laws, rules and regulations as are deposits by domestic insurance companies. [Acts 1961, ch. 263, § 32a, as added by Acts 1969, ch. 241, § 17, p. 927.]"

The State is attempting to protect itself from bail bond forfeitures and to insure that defendants will be present for trial. Although the statute provides two different deposit requirements for the writing of bail bonds, a rational basis for the differentiation can be found. In determining the constitutionality of statutes, legislative classifications will not be set aside if any state of facts ra-

tionally justifying them is demonstrated to or perceived by the courts. *United States* v. *Maryland Savings-Share Ins. Corp.*, (1970) 400 U.S. 4, 91 S.Ct. 16, 27 L.Ed. 4; *State ex rel. Miller* v. *McDonald, supra.*

The ability to meet forfeitures is dependent on the assets of the bondsman. The assets of an "insurer" are required by law to be substantial. See IC 27-1-6-15, (Burns 1975 Repl.); IC 27-1-6-16, (Burns 1975 Repl.); IC 23-1-16-2, (Burns 1972 Repl.). Further, insurers are heavily subject to control by the Department of Insurance. IC 27-1-1-1, (Burns 1975 Repl.).

On the other hand, professional bondsmen are not required to have a minimum amount of assets, nor are they as heavily regulated by the Department of Insurance. Thus, there are real and substantial differences between professional bondsmen and insurers relating to the protection of the State against forfeitures which justifies treating the classes differently. Given the above differences, the trial court's finding that the standards are arbitrary is unfounded. If the classification has some reasonable basis, it does not offend the Constitution merely because the classification is not mathematically precise or because in practice it results in some inequality. *Dandridge* v. *Williams,* (1970) 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491. Further, the greater deposit required of individuals decreases any chance that a bondsman would forfeit a deposit and migrate rather than pay a large judgment. Because of its required assets and multiple investors, an insurance company is relatively stable of itself.

Appellees also urged below that §§ 4 and 5 of P.L. 326, violates their rights to due process and equal protection by excluding surety bondsmen from deposit requirements and by establishing a limit upon the amount of bail bonds that could be written by a professional bondsman while not setting a limit upon surety bondsmen. These arguments are based upon the premise that surety bondsmen and professional

bondsmen are in the same class. However, surety bondsmen are, in fact, agents of and execute bonds for insurers. IC 35-4-5-1 (Burns 1975 Repl.). A forfeiture on a bond written by a surety bondsman would be covered by the insurer's deposit and assets. Thus, surety bondsmen are not in the same class as professional bondsmen, but rather are a part of the insurer classification. The discussion above, differentiating between insurers and professional bondsmen, is, therefore, applicable here. That there is a rational basis for different treatment of insurers and professional bondsmen, as noted above, is sufficient to uphold the different treatment of surety bondsmen and professional bondsmen.

Acts 1973, P.L. 326, § 5 reads as follows:

> "SECTION 5. IC 1971, 35-4-5 is amended by adding a new section to be numbered 34.1 and to read as follows: Sec. 34.1 No person qualifying under section 35-4-5-34 as either a professional bondsman or a property bondsman shall have cash, property or security bail bonds outstanding at any time where the aggregate potential forfeiture liability on such outstanding cash, property or security bail bonds exceeds two (2) times the deposit that the qualifying person has on deposit with the commissioner."

The legislative determination that the limit on the amount of bail bonds written by professional bondsmen is necessary to safeguard the State's interest because of the lack of close regulation of the professional bondsmen, is not a matter for which this Court should substitute its judgment. In *Ferguson* v. *Skrupa, supra,* the United States Supreme Court, in upholding a Kansas statute which prohibited debt adjusting except by attorneys, stated:

> "In the face of our abandonment of the use of the 'vague contours' of the Due Process Clause to nullify laws which a majority of the Court believed to be economically unwise, reliance on *Adams* v. *Tanner* is as mistaken as would be adherence to *Adkins* v. *Children's Hospital,* overruled by *West Coast Hotel Co.* v. *Parrish,* 300 U.S. 379 (1937). Not only has the philosophy of *Adams* been abandoned, but also this Court almost 15 years ago expressly pointed to another

opinion of this Court as having 'clearly undermined' *Adams*. We conclude that the Kansas Legislature was free to decide for itself that legislation was needed to deal with the business of debt adjusting. Unquestionably, there are arguments showing that the business of debt adjusting has social utility, but such arguments are properly addressed to the legislature, not to us. We refuse to sit as a 'super-legislature to weigh the wisdom of legislation,' and we emphatically refuse to go back to the time when courts used the Due Process Clause 'to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought.' Nor are we able or willing to draw lines by calling a law 'prohibitory' or 'regulatory.' Whether the legislature takes for its textbook Adam Smith, Herbert Spencer, Lord Keynes, or some other is no concern of ours. The Kansas debt adjusting statute may be wise or unwise. But relief, if any be needed, lies not with us but with the body constituted to pass laws for the State of Kansas." 372 U.S. at 731-32. (Footnotes omitted.)

Continuing, the Court found that as there was no invidious discrimination, the equal protection guarantee of the Fourteenth Amendment was not violated. The language of the Court in *Skrupa* is equally applicable to the situation at bar. The legislature has set financial requirements that insure a certain permanency to a bondsman's operation, which in turn increases the security of the State against unpaid forfeitures, and more importantly, increases the probability that the bondsman will present the defendant for trial.

For the foregoing reasons, the trial court erred in finding Acts 1973, P.L. 326, §§ 4 and 5, to be unconstitutional. The trial court is, therefore, reversed.

Arterburn and Hunter, JJ., concur; DeBruler, J., concurs in result with opinion; Prentice, J., dissents.

### OPINION CONCURRING IN RESULT

DeBruler, J.—In the court below there was no trial of the issue of whether the harsh and disparate treatment of bondsmen who are sole proprietors would be justified in furtherance

of the State's interest in a dependable and honest bail bond industry. That issue could be decided only upon a consideration by the trial court of the relative nature, character and performance of people bondsmen and surety companies. A comparison of these two classes by the trial court either after a contested trial, a trial upon an agreed state of facts, or even upon facts judicially noticed and made part of the record, is the judicial act which is the *sine qua non* of a valid court judgment declaring the absence of a rational basis for the disparate treatment of the two classes. Here there was no trial, no stipulation of fact, and no fact judicially noticed, supporting the trial court judgment. In *Howard County Board of Commissioners* v. *Kokomo City Plan Commission,* (1975), 263 Ind. 282, 330 N.E.2d 92, this Court recently stated:

> "Where the constitutional validity of a statute is drawn in issue, it is essential that the party bearing the burden on the issue produce a record before the court which justifies deciding the constitutional issue. Such a record provides the court with the necessary tools to make a rational determination. It includes a statement of the legal test to be applied in determining whether a particular constitutional provision has been violated, or citations of authorities which state that test. And it also includes any factual matter necessary to a proper application of the test. Without essential legal argument and factual matter, the court, particularly in a civil case, is justified in refusing to adjudge whether the statute complies with the commands of the constitutions, for in such case it does not 'appear from the record that there is a substantial foundation for the allegation.'

> \* \* \*

> Under the traditional equal protection test, the challenger must present a case which is sufficient to overcome the general presumption of constitutionality. The same party must present the court with the legal and factual means to determine whether the statutory scheme involving a classification is related to the purpose of the act. The party must put before the court a statement of the purpose and objective of the act for which it contends. The party must identify for the court the statutory characteristics which serve to differentiate the classes. And it must show that there is no

rational basis for dissimilarly treating classes having only those differences. This burden may be carried by demonstrating the identity of interest of the two classes which inheres in the subject matter of the legislation." 330 N.E.2d at 96, 98.

Here the parties agreed that there was no issue of fact to be determined and that the court should enter a judgment. As there were substantial issues of fact to be determined, that agreement should have been rejected.

Because of the absence of a factual determination of matter necessary to a valid judgment declaring this statute to be unconstitutional I would reverse and order a new trial.

NOTE.—Reported at 335 N.E.2d 219.