## S01A1174. PRYOR ORGANIZATION, INC. v. STEWART.
(554 SE2d 132)

CARLEY, Justice.

For a number of years, Pryor Organization, Inc. (Pryor) engaged in the bail bond business in Spalding County. In January of 2001, however, the newly elected Sheriff of Spalding County Dee Stewart informed Pryor that he would not allow it to continue to write bonds in the county. At that time, the only reason the Sheriff gave for his action was that he did not need Pryor's services. Pryor filed a petition for mandamus, seeking to compel the Sheriff to reinstate it.

Prior to the hearing, the Sheriff gave Pryor written notice of the numerous specific grounds upon which he based his decision. Although he relied upon all of those reasons before the trial court, only two of them are relevant to this appeal. First, he expressed his concern about the moral character of Mark Pryor, the corporation's principal officer, who had been arrested for impersonating a police officer and a public official, and also for failing to display a county decal on his tag. However, since the State eventually dropped all charges except the traffic offense, the trial court found that this was not a valid reason for the Sheriff to disapprove Pryor to write bonds in the county. The second basis offered by the Sheriff for his decision was a television advertisement filmed by Pryor in the lobby of the Spalding County Sheriff's Office some two years previously. Although the then-sheriff expressly approved the filming, the trial court found that Pryor's act of making the commercial supported the Sheriff's decision because OCGA § 17-6-52 prohibits bondsmen from soliciting or loitering about or around the jail for business purposes. The trial court found that the Sheriff did not abuse his discretion by relying upon OCGA § 17-6-52, and entered a final order denying mandamus. Pryor appeals from that order.

1. Mandamus is an extraordinary remedy that can be granted only when the petitioner has a clear legal right to the relief sought and no other adequate remedy at law. *She, Inc. v. West,* 269 Ga. 201 (498 SE2d 257) (1998). Pryor concedes that the Sheriff has discretion to determine the acceptability of the sureties who write bonds in the county. See *Jarvis v. J & J Bonding Co.,* 239 Ga. 213 (236 SE2d 370) (1977). Mandamus will not issue to compel performance of a discre-

tionary act unless the public official has grossly abused his or her discretion. *Dickerson v. Augusta-Richmond County Comm.*, 271 Ga. 612, 613 (1) (523 SE2d 310) (1999). Thus, Pryor had the burden of showing that the Sheriff's refusal to allow it to continue to write bonds was a gross abuse of his discretion.

The Sheriff's discretion is not absolute, but is circumscribed by the statutes from which his authority derives. See *Jarvis v. J & J Bonding Co.*, supra. OCGA § 17-6-50 establishes the qualifications of "professional bondspersons." If Pryor met those statewide qualifications, then the refusal to permit it to conduct business on the county level cannot be upheld. The Sheriff's decision, under those circumstances, would be "without legal justification or excuse, . . . arbitrary, illegal and capricious and an abuse of discretion. . . ." *McWhorter v. Settle*, 202 Ga. 334, 335 (3) (43 SE2d 247) (1947). See also *Fulton County v. Bartenfeld*, 257 Ga. 766, 771 (4) (363 SE2d 555) (1988); *Arras v. Herrin*, 255 Ga. 11, 12 (334 SE2d 677) (1985). "[T]he legally flawed exercise of discretion is the same as refusal to exercise any discretion, which is a manifest abuse of discretion. [Cits.]" *Wilson v. State Farm Mut. Auto. Ins. Co.*, 239 Ga. App. 168, 172 (520 SE2d 917) (1999). Therefore, we must determine if the evidence demanded a finding that Pryor satisfied the requirements set forth in OCGA § 17-6-50 for approval as a "professional bondsperson."

OCGA § 17-6-50 (b) (4) provides that Pryor must remain "in good standing with respect to all applicable . . . state . . . laws. . . ." OCGA § 17-6-52 is such a law, and by its terms, it prohibits professional bondsmen from either soliciting business or loitering "about or around jails, places where prisoners are confined, or the courts for the purpose of engaging in or soliciting business as such bondsmen." Pryor filmed the advertisement in a public building which houses county prisoners. Thus, the statute forbids solicitation of bail bond business about or around those premises, and we must decide whether the making of the film at that site constituted a proscribed act of solicitation by Pryor.

OCGA § 17-6-52 is a criminal statute. *Jackson v. Beavers*, 156 Ga. 71, 73 (2) (118 SE 751) (1923). Therefore, it must be strictly construed in favor of Pryor. See *Busch v. State*, 271 Ga. 591, 592 (523 SE2d 21) (1999). The statute does not, by its terms, forbid bondsmen from using a jail or courthouse as the backdrop for an advertisement. Previously, this Court has held that the underlying purpose of the enactment is to regulate "[t]he business of professional bondsmen [which] affords peculiar opportunity for fraud and imposition upon the persons whom they serve." *Jackson v. Beavers*, supra at 75 (5).

[S]uch business may be so conducted as to seriously interfere with the fair and proper administration of the criminal

laws. The unscrupulous may devise means and methods for the escape of violators of the penal statutes. They may use improper and illegal means to secure the acquittal of their clients. For these and other reasons which could be given, this business comes within the police power of the State.

*Jackson v. Beavers,* supra at 75 (5). These recognized justifications for imposing a limitation on the solicitation of bail bond business all relate to the potential adverse impact on the judicial system occasioned by a bondsman's actual physical presence in or around a jail facility or courthouse or his actual physical contact with incarcerated individuals. Such an adverse impact or physical contact did not result from Pryor's mere use of the lobby of the sheriff's office to film its commercial. Pryor's presence on the premises was not for the purpose of soliciting potential clients who were currently incarcerated or who were then presently awaiting arraignment or trial. No individual prisoner was approached and only the general public was solicited when the advertisement subsequently ran on television. Thus, Pryor did not avail itself of any "peculiar opportunity" to commit fraud or to impose upon those whom it served. The advertisement was directed only at those who might need the services of a bondsman at some future time. Construing OCGA § 17-6-52 strictly, it is not intended to have such a far-reaching application as to prohibit a free-market solicitation of the general public by means of a commercial filmed on location at a jail or court facility. Thus, the Sheriff abused his discretion in citing the advertisement as justification for his decision, and the trial court erred in denying mandamus on the ground that Pryor violated OCGA § 17-6-52. See *McWhorter v. Settle,* supra at 335 (3).

2. Although the Sheriff also based his decision upon the arrest of Mr. Pryor for the various offenses, the trial court concluded that this was not a proper reason. On appeal, however, the Sheriff continues to assert that this was a valid ground for the exercise of his discretion. Because a judgment that is right for any reason should be affirmed, we will consider the viability of this alternative basis for upholding the Sheriff's decision.

A "professional bondsperson" must be one who is "of good moral character *and* [who] has not been convicted of a felony or any crime involving moral turpitude. . . ." (Emphasis supplied.) OCGA § 17-6-50 (b) (3). Because the two requirements are stated in the conjunctive, the mere fact that Mr. Pryor was never convicted of the crimes for which he was arrested is not dispositive. *Harrison v. Wigington,* 269 Ga. 388, 390 (2) (497 SE2d 568) (1998). The lack of prior convictions does not necessarily equate to good moral character. Even in the criminal context, neither an acquittal nor a failure to prosecute

necessarily bars the admission of relevant evidence of the defendant's prior bad acts. See *Moore v. State*, 254 Ga. 674 (333 SE2d 605) (1985); *McGuire v. State*, 188 Ga. App. 891 (1) (374 SE2d 816) (1988). Thus, if Mr. Pryor committed the acts for which he was arrested, and those acts were sufficient to show his lack of good moral character, then the Sheriff's exercise of his discretion on that ground must be upheld.

By his own admission, Mr. Pryor pursued a speeding vehicle in Pike County and, using his radio, contacted a deputy sheriff in a nearby patrol car. After identifying himself as "Spalding 707," Mr. Pryor informed the deputy sheriff that he was following a suspected stolen vehicle and asked the officer for assistance. According to him, Spalding 707 was his "assigned number . . . at the Spalding County Sheriff's Department when [he] was a deputy coroner for eight months." Mr. Pryor does not contend that that official position authorized him to engage in the type of law enforcement work he was then performing in Pike County. When the car he was chasing turned, Mr. Pryor radioed the officer to ask whether he should follow. The deputy sheriff, apparently believing that he was speaking with a fellow officer, instructed him to do so. Thereafter, using strobe and blue lights, Mr. Pryor stopped the vehicle. When the actual officers arrived and determined that Mr. Pryor was not authorized to make the stop, they arrested him for impersonating a police officer and a public official.

On this evidence, it is clear that Mr. Pryor violated the spirit, if not the letter, of OCGA §§ 16-10-23, 40-6-395 (c) (2) and 40-8-90 (a). Even if he lacked the intent to deceive, he falsely held himself out to be a peace officer by using the "Spalding 707" designation to identify himself at a time when he did not occupy any official position authorizing him to make an arrest in Pike County. Because only law enforcement vehicles are authorized to carry flashing or revolving blue lights, he impersonated a police officer when he stopped the other driver's vehicle. He also subjected himself to possible civil liability for the false arrest or false imprisonment of the other motorist. "Good moral character" can be defined as "[a] pattern of behavior conforming to a profession's ethical standards and showing an absence of moral turpitude." Black's Law Dictionary (7th ed. 1999), p. 701. The applicable profession is that of bail bondsperson and the Sheriff, in the exercise of his discretion, was authorized to find that Mr. Pryor did not conform to the ethical standards of that profession and that he did not show a lack of moral turpitude. It was reasonable to conclude that Mr. Pryor acted as a vigilante and that his conduct in that regard reflects adversely upon his qualification to serve as a professional surety. Certainly, the circumstances did not demand a finding that Mr. Pryor's acts were completely ethical and without any degree

of moral turpitude. Thus, in determining that the incident was not a valid ground for the Sheriff's decision, the trial court erroneously substituted its judgment for his. Under the evidence, the Sheriff's exercise of his discretion "was based on specific, objective criteria set forth in the . . . Code. [Cit.] It follows that the decision . . . was not arbitrary or capricious, and that, therefore, a writ of mandamus will not lie. [Cit.]" *Dickerson v. Augusta-Richmond County Comm.*, supra at 613 (1).

While Pryor urges on appeal that "good moral character" is unconstitutionally vague, it did not attack the constitutionality of OCGA § 17-6-50 (3) in the trial court. Compare *Harrison v. Wigington*, supra at 389 (2). The sole contention below was that, as its agent, Mr. Pryor's acts were not disqualifying under any provision of the statute, and Pryor did not assert that the enactment itself was deficient because a specific subsection thereof was unconstitutional and generally unenforceable. The term "good moral character" is sufficiently definite to apprise an individual purporting to serve as a "professional bondsperson" that he or she cannot engage in unauthorized acts of law enforcement as did Mr. Pryor. See generally *Land v. State*, 262 Ga. 898, 899 (1) (426 SE2d 370) (1993). Therefore, even if it had been raised, there would be no merit to a constitutional challenge under the circumstances of this case.

3. Pryor contends that the Sheriff violated due process when he acted without first giving a specific reason for his action or allowing Pryor to contest his decision. However, Pryor never stated a claim for any alleged violation of procedural due process. Compare *Baldwin v. Daniels*, 250 F3d 943 (5th Cir. 2001) (§ 1983 action); *Abercrombie v. City of Catoosa*, 896 F2d 1228 (10th Cir. 1990) (§ 1983 action); *American Druggists Ins. Co. v. Bogart*, 707 F2d 1229 (11th Cir. 1983). It filed a petition seeking the writ of mandamus, the sole purpose of which is to compel performance of an official duty. *Tamaroff v. Cowen*, 270 Ga. 415 (511 SE2d 159) (1999). The petition did not seek to force the Sheriff to conduct a hearing or provide Pryor with notice, but sought only substantive relief, in the form of an order compelling the Sheriff to continue to permit Pryor to write bonds in Spalding County.

Moreover, by the time of trial, the Sheriff had already given Pryor notice of the specific grounds upon which he based his decision, and Pryor does not contest the sufficiency of that notice. An initial procedural violation can be cured by a subsequent procedural remedy. *Atlanta City School Dist. v. Dowling*, 266 Ga. 217, 218 (466 SE2d 588) (1996). Insofar as a hearing is concerned, Pryor had a full and fair opportunity to contest the Sheriff's decision at the trial of the mandamus action. " 'Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if

the opportunity given for the ultimate judicial determination of the liability is adequate. [Cits.]'" *Bowles v. Willingham*, 321 U. S. 503, 520 (IV) (64 SC 641, 88 LE2d 892) (1944). Thus, even assuming, without deciding, that the Sheriff deprived Pryor of procedural due process at the outset, there was no actionable due process violation because the subsequent notice and hearing were an acceptable "'means to remedy the deprivation.'" *Atlanta City School Dist. v. Dowling*, supra at 218. See also *Board of Commissioners of Effingham County v. Farmer*, 228 Ga. App. 21 (1) (493 SE2d 21) (1997).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 1, 2001 —
RECONSIDERATION DENIED NOVEMBER 19, 2001.

*Meadows, Ichter & Trigg, Michael J. Bowers, T. Joshua Archer, Strongwater & Cherniak, Leeza R. Cherniak*, for appellant.
*Beck, Owen & Murray, James R. Fortune, Jr.*, for appellee.