A04A0048. BAKER v. GWINNETT COUNTY.
A04A0049. GWINNETT COUNTY v. BAKER.
(600 SE2d 819)

SMITH, Chief Judge.

Michael Baker brought this action for breach of contract against Gwinnett County. He alleged that the county wrongfully terminated his coverage under a local ordinance authorizing defense and indemnification of employees named in lawsuits alleging liability based on actions taken in the performance of the employees' official duties. The trial court granted summary judgment to the county and denied Baker's motion to amend his complaint. In Case No. A04A0048, Baker appeals, raising several enumerations of error, most of which focus on the trial court's conclusion that the county attorney did not abuse her discretion in terminating Baker's coverage. We find no error, and we affirm. In Case No. A04A0049, the county appeals, arguing that the trial court erred in concluding that Baker was covered under the terms of the ordinance. In light of our holding in Case No. A04A0048, we need not reach this issue.

In late 1996, Robin Davis filed a lawsuit against the Gwinnett County Board of Commissioners, the Gwinnett County sheriff, and certain employees of the sheriff's department, including appellant Michael Baker. Among a number of other claims, Davis alleged sexual harassment and sexual discrimination. The Gwinnett County law department undertook representation of all defendants pursuant to a local ordinance providing a defense and indemnification plan for Gwinnett County officers and employees (the "Plan"). The Plan provides that after the county attorney assumes the defense of a claim or proceeding, a Plan member's coverage may be terminated "at any time prior to trial or settlement, only if the County Attorney determines that . . . the Plan Member refuses to comply with any requirement of Section 6." Section 6 (e) of the Plan requires a member to "cooperate fully with the County Attorney" and to assist "with the conduct of the litigation." Senior assistant county attorney Scott Fuller served as the primary attorney, and county attorney Karen Gilpen Thomas and deputy county attorney Melinda Wells also served as attorneys of record.

The record shows that Davis directed interrogatories to Baker, one of which required him to list his past employment and to provide specific information concerning each job. In his response, Baker noted that he had "held many jobs and many positions" and "that there may have been jobs or positions not included in this response" which he was "unable to recall at the present time." Baker then provided the names of 12 previous positions he had held since 1956, along with approximate dates and short descriptions of the jobs.

Before preparing the final interrogatory responses on Baker's behalf, Fuller sent them to Baker and asked him to review them thoroughly. Baker and Fuller met to discuss the responses. Fuller prepared a draft of the responses, which he sent to Baker along with a letter asking Baker to review all documents "very careful[ly] to ensure that the response to each question is accurate." He further noted that this was "very important due to the fact that should your testimony be given in District Court, this will be your response." It is undisputed that Baker omitted his prior employment as an officer with the Boynton Beach, Florida police department from his responses.

During Baker's subsequent deposition in the Davis litigation, when asked if he ever worked for the City of Boynton Beach police department, Baker immediately answered affirmatively and stated that he had worked there 363 or 364 days. He stated that he did not complete his one-year probationary period. Opposing counsel inquired of Baker as to why he had not completed the probationary period, and he answered that he was "trying to recall. My version? Their version?" Baker's "version" was that he had a sick child and a back injury that kept him out of work. He recalled no other reasons as to why he was terminated before his completion of the probationary period, nor did he recall the city's "version" as to why he did not complete the one-year period. The record contains evidence showing that he was terminated because of "a problem in attitude and job attendance, sick time and reporting for duty late on several occasions." Baker's job evaluation form reflects his supervisor's statement that he spoke with Baker several "times in reference to his performance and/or attitude" and the supervisor's detailed reasons for this conclusion. Baker was also questioned during his deposition in the Davis lawsuit about a workers' compensation claim he made while employed with Boynton Beach. He testified that he could not recall hiring an attorney, making a claim, or receiving a settlement. The record shows that he received a settlement of $2,540.

Approximately three weeks after Baker's deposition, county attorney Karen Gilpen Thomas notified Baker by letter that his coverage under the Plan was terminated. Thomas explained in the letter that during Baker's deposition, his verified interrogatory responses, which he had actively helped prepare, had been "shown to be false or inaccurate in at least 3 instances" and that he "gave deposition testimony under oath which contradicted [his] verified interrogatory responses in 3 instances." Among other things, Thomas further noted that Baker's deposition testimony as to whether he had made claims in the past for work-related injuries "appeared to be inconsistent with" evidence produced by opposing counsel "and gave the appearance that [his] testimony in the deposition was not fully

accurate or complete." Baker was required to retain his own counsel to represent him in that litigation, which was ultimately resolved by way of summary judgment in favor of all defendants.

After the Davis litigation was resolved, Baker brought this action against Gwinnett County alleging that the decision to terminate his coverage under the Plan was unlawful. He sought an amount equal to the attorney fees incurred in the previous litigation, as well as attorney fees for the complaint brought against Gwinnett County. Both parties unsuccessfully moved for summary judgment. This court granted the application for interlocutory appeal filed by Gwinnett County but subsequently dismissed the appeal as having been improvidently granted. The case proceeded to a jury trial before a magistrate sitting by designation.

After the trial commenced and during cross-examination of Thomas, the court sua sponte declared a mistrial and granted summary judgment in favor of Gwinnett County. The court reasoned that the decision to terminate Baker's coverage was discretionary and that no factual issues existed for a jury to determine. The court later stayed its oral ruling to allow all parties to submit supplemental briefs and then again entered summary judgment in favor of Gwinnett County. In its written order, the court concluded among other things that the county attorney was vested with discretion by the Plan to determine whether Plan violations had occurred and that the question of whether a public official has abused his or her discretion is one of law for the court. The court then found that facts in the record supported Thomas's conclusion that Baker "had refused to cooperate with the County during the defense of the *Davis* litigation" and that

> [b]ecause there are facts that support her decision, Karen Thomas . . . did not abuse her discretion, or act arbitrarily or capriciously, when she decided to terminate [Baker's] defense and indemnification under the *Plan*. If that discretion was unwise or if that discretion was unprecedented, it doesn't mean that it was an *abuse* of discretion, or that it was *arbitrary or capricious*, it just means that it was discretion *exercised* since there are facts that support her decision.

Baker appeals from this decision.

1. Baker argues that the trial court erred in reviewing Thomas's decision under an abuse of discretion standard. He contends that "[a] court may not uphold a government official's decision based on an isolated fact buried in the record, but rather must examine the record as a whole and consider whether the action taken was arbitrary, capricious, and unreasonable." Alternatively, he maintains that even

under an abuse of discretion standard, the decision to terminate coverage was not based on any facts in the record and therefore cannot stand.

Under OCGA § 45-9-21 (a), the legislature has given counties, "in their discretion," the authority to provide legal defense and indemnification to employees. The phrase "in their discretion" used in the statute "indicates a legislative intent to give the county considerable latitude in determining what actions will be defended." *Haywood v. Hughes*, 238 Ga. 668, 669 (235 SE2d 2) (1977). And when the legislature "has conferred on other governmental entities the right and duty to make certain decisions, [the Georgia Supreme Court] has consistently ruled that the courts of this state must not interfere with such decisions as made unless a governmental unit in question clearly abused its discretion. [Cits.]" *Richmond County Hosp. Auth. v. Richmond County*, 255 Ga. 183, 186 (1) (c) (336 SE2d 562) (1985). As discussed above, Gwinnett County implemented a defense and indemnification plan broadly providing for termination of coverage if a Plan member refused to "cooperate fully with the County Attorney."

Baker correctly points out that Fuller testified during his deposition that Baker "made himself available to" work with Fuller during the course of litigation and attended depositions when requested and that "other than failing to make complete disclosure in his interrogatories, [Baker] was very cooperative." But Fuller also testified about Baker's deposition, stating that he found "it difficult to believe that somebody can't recall retaining an attorney, filing a workers' compensation claim and receiving money." Fuller stated that he advised Thomas "what happened in the deposition; that is that Mr. Baker had not disclosed employment at, in the city of Boynton Beach to me, despite extensive conversations concerning his previous employment" and that "during the deposition, he seemed to recall a great deal about the city of Boynton Beach immediately." He also told Thomas that when presented with documents concerning the workers' compensation claim during the deposition, Baker "testified that he had no recollection."

When asked to state the basis of his impression that Baker had been deliberately attempting to conceal his employment with Boynton Beach or his workers' compensation claim, Fuller explained that he and Baker had "review[ed] in detail every last place that he worked" and that Boynton Beach was not one of the places that he mentioned. Fuller also observed that the Boynton Beach job "involved a position in which Mr. Baker was employed as a police officer" and that in his experience representing police officers, he found it "unusual for a police officer to not remember a place where they've worked previously, in the same capacity." He similarly found "it difficult to believe, from an objective standpoint, that somebody could

forget where they worked for a year." Fuller also explained that "when the city of Boynton Beach was posed to" Baker during his deposition, Baker "had immediate recall of right down to the number of days that he worked there." Finally, Fuller testified that following Baker's deposition, Baker told him he would "say whatever was in the best interest of Mike Baker, whether he was under oath or not, and that caused me to call to question anything that he said . . . at his deposition." Fuller testified that this statement, which Baker denied having made, in addition to Baker's failure to disclose his experience with Boynton Beach, caused him to believe "it was reasonable . . . to conclude that Mr. Baker was purposely withholding information concerning his employment at Boynton Beach . . . from the law department."

During her deposition, Thomas acknowledged that she did not read Baker's deposition before making the decision to terminate his coverage. She testified, however, that she consulted with Fuller and Wells before she made this decision and that "in their views . . . a withdrawal was warranted." She "relied upon the interaction that Mr. Fuller had with Mr. Baker with Mr. Baker's testimony in his deposition and with information Mr. Baker had provided to Mr. Fuller with regard to interrogatory responses." Thomas stated that Baker "was not fully cooperative with the defense of the case," and that "he did not provide accurate and truthful information, [and] was not forthcoming with requested information." Specifically, according to Thomas, Baker "did not provide information regarding employment, employment with Boynton Beach, with his termination, with reasons for termination, with workers' comp claims that he filed or [had] been involved with." She believed that these omissions were "relevant with regard to Mr. Baker's credibility in the Robin Davis litigation." We note that Thomas testified at trial that she was aware of Baker's alleged statement to Fuller that he would be untruthful if necessary, but that she did not rely on this information. Instead, she deliberately chose "to utilize the factual information between the interrogatories and the deposition testimony as opposed to a . . . statement that was not made under oath."

Baker correctly points out that his employment with Boynton Beach occurred approximately 20 years before the events that transpired in this case. In addition, as argued by Baker, Fuller testified that Baker was cooperative with other areas of litigation not related to his omission in his interrogatory responses. And he did state in those responses that he may not recall every single past job. Nevertheless, the record also shows that Thomas had a reasoned, articulated basis for her decision to terminate Baker's coverage under the

Plan and that she did not simply presume that Baker deliberately omitted his employment with Boynton Beach from his interrogatory responses.

The allegations against Baker in the Davis litigation arose out of Baker's alleged misconduct related to his position as a law enforcement officer. As argued by Gwinnett County, the prior employment that Baker claimed he could not recall when he helped prepare his interrogatory responses was not simply a "single past job," which might "be construed as mere oversight." Rather, he "omitted his employment as a *police officer* with Boynton Beach, where he had been fired," where he had worked for nearly a year, and where he had received a workers' compensation settlement of more than $2,000. When questioned about Boynton Beach, he immediately recalled the exact number of days of employment, and he recalled that more than one "version" existed concerning the reasons for his termination. His "version" conflicted in large part with documentation showing that he had been reprimanded a number of times concerning his poor attitude. These facts were known to Thomas at the time she terminated Baker's coverage.

Baker's credibility was called into question by his deposition testimony concerning his experience at Boynton Beach and his failure to include his prior employment as a police officer in his interrogatory responses. Baker's omission was material. Considering the entire record, as Baker argues we must do, the record supports Thomas's conclusion that Baker deliberately withheld information in his interrogatory responses and, consequently, that he failed to cooperate fully with the county attorney. The trial court correctly concluded that Thomas's decision was not arbitrary or capricious and correctly refused to substitute its judgment for that of the county attorney.

Citing *Cleveland v. Skandalakis*, 268 Ga. 133 (485 SE2d 777) (1997), Baker argues that application of an abuse of discretion standard "flies in the face of the only Georgia Supreme Court case that has reviewed a county's decision not to provide coverage to an employee pursuant to a defense and indemnification plan." We agree with Gwinnett County that "[a]lthough *Cleveland* and the present case both relate to defense and indemnification plans, they concern otherwise different issues." The public official in *Cleveland* did not undertake a discretionary act but instead denied coverage based on language in a county ordinance expressly stating that the county " 'shall refuse to provide for the defense of a claim or proceeding' " against an employee if the employee failed to make a timely request for representation. Id. at 134. Here, the Gwinnett County ordinance allowed Thomas to terminate coverage under certain conditions, one

of which was the failure to cooperate with the conduct of the litigation. Again, she was vested with discretion to make this determination. And as discussed extensively above, her decision was not, as Baker argues, "without legal justification or excuse, arbitrary, illegal and capricious and an abuse of discretion." (Citations and punctuation omitted.) *Pryor Organization v. Stewart*, 274 Ga. 487, 488 (1) (554 SE2d 132) (2001). The trial court did not err in granting summary judgment to Gwinnett County.

2. For the same reasons discussed in Division 1, the trial court did not err in denying summary judgment to Baker.

3. Baker argues that the trial court erroneously denied his motion to amend his complaint to add a mandamus claim after the trial court granted a mistrial and stayed its oral grant of summary judgment in favor of Gwinnett County. He sought to add the Gwinnett County Board of Commissioners and the county attorney in their official capacities, and his proposed action sought to compel the new parties "to authorize the expenditure of county funds to pay the attorney's fees and expenses" he incurred in the previous litigation. He stated in his motion that he "would rely on the same evidence to support his mandamus claim as he anticipated presenting in support of his breach of contract claim."

We find no merit in Baker's contention. "Mandamus is an extraordinary remedy that can be granted only when the petitioner has a clear legal right to the relief sought and no other adequate remedy at law. . . . Mandamus will not issue to compel performance of a discretionary act unless the public official has grossly abused his or her discretion." (Citations omitted.) *Pryor Organization*, supra at 487-488. As discussed in Division 1, Thomas articulated valid reasons for her decision to terminate Baker's coverage. Baker failed to show that he had a "clear legal right" to continued coverage under the Plan, and the record does not show that Thomas "grossly abused . . . her discretion." Id. The trial court did not err in denying Baker's motion to amend his complaint.

4. Baker contends that his prior motion to add parties was erroneously denied. He sought to add Fuller, Thomas, and deputy county attorney Melinda Wells after he took their depositions. He argued that these individuals used privileged communications between Fuller and himself to terminate his coverage under the Plan. As discussed above, Fuller testified during his deposition that immediately after Baker's deposition in the Davis litigation, Davis told him that he would "say whatever was in the best interest of Mike Baker, whether he was under oath or not, and that caused me to call to question anything that he said . . . at his deposition." In his motion for leave to add parties, Baker argued that he first learned of this statement, which he claims is false, during Fuller's deposition, that

Thomas relied on this statement by Fuller in making her decision to terminate his coverage, and that Thomas relied on other communications between him and Fuller concerning his employment history and other issues to justify termination of coverage. He contended that he learned during these individuals' depositions that neither Wells nor Thomas reviewed his deposition testimony in the Davis litigation before making the decision to terminate coverage.

It is undisputed that Fuller told both Wells and Thomas that Baker had indicated he would be untruthful under oath to protect himself or his family. But Thomas was the party responsible for making the final decision concerning Baker's coverage, and she testified unequivocally that she did not rely on this statement in making her decision. The facts she *did* rely on more than amply support her decision. She did not abuse her discretion, and it follows that the trial court did not err in denying Baker's request to add her or her subordinates as defendants.

As for Baker's argument that Thomas did not read his deposition before terminating his coverage, we must agree with Gwinnett County that Thomas was entitled to rely on Fuller to inform her "of events occurring during pending litigation." We also agree with the county that "[i]t can be neither improper nor an abuse of discretion to rely on such deputies for such actions" and, further, that it is disingenuous "to suggest that such a method of defending a government can result in an abuse of discretion."

5. Baker contends assignment of the lawsuit to a magistrate constituted a violation of the Georgia Constitution. It appears that this issue was raised for the first time after the trial court declared the mistrial but before the court entered its final order granting summary judgment to Gwinnett County. On May 16, 2003, Baker filed an objection to the judicial assistance order referring the case to the magistrate "for those proceedings that may occur during the time period of May 12-16, 2003." He contended in that motion that "[b]ased on information and belief," the magistrate "appear[ed] in the Superior Court on a continuing and regular basis and, with particular respect to this litigation, amounts to an ongoing and indefinite delegation of judicial powers in a manner that is contrary to Georgia law."

We find no merit in Baker's contentions. First, he has submitted no evidence on which he bases his allegations that this magistrate sat in Superior Court on a continued basis. Second, he waited until after trial to make any objection, and "if there is no objection to the appointment of the magistrate sitting as a superior court judge prior to the commencement of the trial, the issue is not preserved for appellate review." (Citations omitted.) *Bennett v. Jones*, 218 Ga. App. 714, 715 (1) (463 SE2d 158) (1995).

6. In light of our holding in Division 1, we need not reach Baker's remaining contentions, nor do we need to reach the contentions raised by Gwinnett County in Case No. A04A0049.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JUNE 15, 2004.

*Freeman, Mathis & Gary, Christopher E. Parker, William H. Buechner,* for appellant.

*Thompson, O'Brien, Kemp & Nasuti, John P. O'Brien, Bret T. Thrasher,* for appellee.