**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 13, 2023**

# In the Court of Appeals of Georgia

A22A1370. THE BONDSMAN, INC. et al. v. KEYBO TAYLOR, SHERIFF OF GWINNETT COUNTY.

RICKMAN, Chief Judge.

After being denied a renewed certificate of authority to operate as a professional bondsperson[1] in Gwinnett County in 2021, The Bondsman, Inc. and John P. Nevil II (collectively, "the Bondsman") filed a petition for writ of mandamus seeking a court order directing the newly-elected Sheriff of Gwinnett County Keybo Taylor to renew and issue the certificate. The Sheriff filed a motion for summary judgment, asserting that he was entitled to judgment as a matter of law because he acted within his discretion when refusing to renew the Bondsman's certificate. The trial court conducted a hearing and granted summary judgment to the Sheriff before

---

[1] See OCGA § 17-6-50 et. seq.

receiving evidence in support of the mandamus action. For the following reasons, we vacate the trial court's summary judgment order and remand this case for additional proceedings in accordance with this opinion.

> In order to prevail on a motion for summary judgment under OCGA § 9-11-56, the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law. Moreover, on appeal from the denial or grant of summary judgment, the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citation and punctuation omitted.) *Alford v. Hernandez*, 343 Ga. App. 332, 337 (C) (807 SE2d 84) (2017). With respect to a mandamus action, the decision of a public official who is given discretion to act or not act is not subject to mandamus relief absent a gross abuse of discretion. See OCGA § 9-6-21 (a).

In Georgia, the authorization and regulation of bonding companies is committed largely to the discretion of the sheriff of each county, who is responsible for establishing rules and regulations which must include, but are not limited to, certain statutory requirements. See OCGA §§ 17-6-15 (b) (1), 17-6-50 (b) (4).

Sheriffs are also vested with the authority to review applications and issue annual certificates of authority to those seeking to write surety bonds in his or her county. See Gwinnett County Sheriff's Office Rules and Regulations for Bonding Companies ("Rules"), Rule 2.1.

The Bondsman first received a certificate of authority in 1999, and has been engaged in the bail bond business in Gwinnett County since that time, having obtained a renewed certificate of authority every year until 2021. Neither the Bondsman nor Nevil individually were ever cited for violations related to the bonding business.

On February 4, 2021, the Sheriff sent the Bondsman a copy of his newly-revised Rules governing professional bondspersons with a letter requesting a date for a meeting prior to the renewal of the Bondsman's certificate of authority. The unrecorded meeting transpired on February 23, 2021, during which the Sheriff purportedly presented the Bondsman with a list of its allegedly outstanding Fieri Facias ("fi.fa.'s").[2] The Bondsman asserts that the list included certain fi.fa.'s for

[2] A fi.fa. is "[a] writ of execution that directs a marshal or sheriff to seize and sell a judgment debtor's property to satisfy a money judgment." Black's Law Dictionary (11th ed. 2019). If a detainee for whom a bonding company has filed a bond fails to appear in court, the court will issue a bench warrant for the detainee's arrest and order an execution hearing. See OCGA § 17-6-71 (a). The bonding

3

which its liability had been released, and others that had been issued by a different bonding company and/or in a different county. The Sheriff's letter did not inform the Bondsman that the renewal of its certificate of authority was dependent upon its satisfaction of the outstanding fi.fa.'s.

On March 1, 2021, the Sheriff denied the Bondsman's annual certificate of authority and revoked his authority to issue surety bonds in Gwinnett County. In the denial letter, the Sheriff stated that "the number of Bondspersons exceeds the diminishing demand for bonds," and that the number of bond companies must be reduced in order "to ensure bond companies can meet their obligations and continue to provide service to the courts, the Sheriff's Office and the citizens of Gwinnett." The Sheriff then stated that the Bondsman had "woefully failed to meet its financial obligations" and that "[t]he number, age and value of unpaid [fi.fa.] leins [sic] demonstrates that the company is mismanaged."[3] The Sheriff went on to allege that

company has certain procedural rights with respect to the execution hearing that must be followed before the company's liability on the bond can be established. See OCGA § 17-6-71 (a). If a court determines that judgment on a forfeiture of the bond should be entered, the court will enter judgment and file a writ of fi.fa. with the clerk. See OCGA § 17-6-71 (b). The fi.fa. is a lien on the judgment debtor's property used to secure the bond and a mechanism by which a sheriff may seize that property.

[3] The Bondsman satisfied all of its outstanding fi.fa.'s by March 5, 2021.

4

the Bondsman was "in violation OCGA § 17-6-50 (b) (4)[4] and [Rule] 8.1[5] and thereby fail[ed] to meet the minimum qualifications of a professional bondsperson."

The Bondsman filed the instant mandamus action seeking an order directing the Sheriff to issue the 2021-2022 certificate. The Bondsman asserted that it had complied with all of the statutory laws, rules, and regulations established by the Sheriff with respect to its financial obligations, including OCGA § 17-6-50 (b) (4) and Rule 8.1, and had never been given notice by the Sheriff of violations of any kind.[6] Further, the Bondsman contended that the certificate was essential to its pursuit

---

[4]OCGA § 17-6-50 (b) (4) provides that "[a] professional bondsperson is one who holds himself or herself out as a signer or surety of bonds for compensation who . . . [i]s approved by the sheriff and remains in good standing with respect to all applicable federal, state, and local laws and all rules and regulations established by the sheriff in the county where the bonding business is conducted."

[5] Rule 8.1 governs the process by which the Sheriff may take money from a bonding company's escrow account when a bond has been forfeited. It includes a requirement that the Sheriff give written notice to the bonding company of any unpaid forfeited bond amount and give the bonding company 120 days to satisfy the obligation. If the obligation is not satisfied within that time, the rule states that the Sheriff will provide additional notice to the bonding company and, after 180 days if the financial obligation remains unmet, the Sheriff is entitled to withdraw the unpaid amount from the bonding company's escrow account.

[6] A professional bonding company must adhere to statutory and regulatory law with respect to its financial qualifications and obligations and the maintenance of its cash escrow accounts. See OCGA § 17-6-15 (b) (1) (E); Rules 5.1-5.8.

5

of a livelihood, thus it had a protected interest in the renewed certificate of authority, and because it met the minimum qualifications necessary for the certificate, the Sheriff's denial of the same amounted to a gross abuse of discretion.

The Sheriff filed a motion for summary judgment, arguing that he had the discretion to deny the Bondman's renewal certificate and was, therefore, entitled to judgment as a matter of law. The trial court scheduled a hearing for both the mandamus action and the summary judgment motion, at which the parties agreed that the court would first hear argument on the motion for summary judgment.

During the hearing, the Sheriff conceded that Rule 8.1, which had been cited as having been violated in the Bondsman's non-renewal letter, did not apply to the Bondsman's renewal application. Nevertheless, the Sheriff maintained that the Bondsman had "an obligation . . . to timely pay off" its fi.fa's, and that its failure to do so justified the nonrenewal of its certificate under OCGA § 17-6-50 (b) (4) (giving the Sheriff the authority to approve professional bondspersons who "remain[ ] in good standing with respect to all applicable federal, state, and local laws and all rules and regulations established by the sheriff in the county where the bonding business is conducted"). The Sheriff specifically mentioned four other Rules that he asserted he could have cited in support of his allegation that the Bondsman was in violation,

6

although none of the cited Rules made any reference to the payment of outstanding fi.fa.'s.[7]

The Bondsman, on the other hand, maintained that it did not violate OCGA § 17-6-50 (b) (4) or Rule 8.1 and had otherwise complied with all statutory and regulatory requirements with regard to its financial obligations; its outstanding fi.fa.'s were not evidence of company mismanagement; and the Sheriff failed to follow his

---

[7] Specifically, the Sheriff cited Rule 1.1 ("Georgia Law authorizes the Sheriff to approve all entities and individuals seeking to do bonding business in Gwinnett County. In order to implement the authority vested in the Sheriff by Georgia law, the Sheriff has issued the following rules, regulations, and requirements ('Regulations') that shall govern the operation of bonding businesses in Gwinnett County. These Regulations in no way prohibit the Sheriff or his authorized agent(s) from establishing additional policies or procedures for approving and regulating bonding businesses, nor shall they limit the Sheriff's Constitutional and/or statutory rights to approve applications for the privilege of writing bail bonds."); Rule 4.4 ("No Certificate of Authority shall be issued to any professional bonding company or entity whose officer or partners have failed to meet their bonding obligations in Gwinnett County or any other county within the State of Georgia."); Rule 5.5 ("All persons, professional bonding companies, and entities covered by these Regulations shall be required to remain in good standing with respect to all applicable state and federal laws governing the operation of business. A violation of any applicable laws could result in modification, suspension or revocation of an applicant's Certificate of Authority"); Rule 7.4 (5) ("There shall be a continuous duty on the part of all approved bonding companies and applicants to update their records with the Sheriff's Office upon the happening of any of the following events . . . The applicant is suspended from writing bonds or has had its bonding privileges revoked in another jurisdiction.")

own Rules (whether Rule 8.1 or otherwise[8]) with respect to providing notice to the Bondsman that he was allegedly in violation of the Rules or engaged in sanctionable conduct.

The trial court granted summary judgment in favor of the Sheriff after concluding that it could not determine that the Sheriff grossly abused his discretion by denying the Bondsman's renewal certificate based upon its outstanding fi.fa.'s. The evidentiary hearing on the writ of mandamus was not reached.

This appeal followed. The Bondsman maintains that the Sheriff abused his discretion by denying its renewal certificate, in which it had a vested interest, without evidence that it had violated any Rules or statutory law; without setting forth articulable, objective criteria from which to assess its financial condition; and without giving it proper notice as required by the Rules. The Bondsman further contends that the Sheriff "made no attempt to establish any connection between the Bondsman's

---

[8] See Rule 12.2 ("The prohibitions listed in these Regulations are not intended to be an exhaustive list. Any bonding company or entity, or any of its agents or employees, that commits any act not specifically prohibited herein that the Sheriff, in his discretion, deems inappropriate or sanctionable may be subject to the penalties listed in Exhibit A [which lists sanctions ranging from a verbal reprimand to a revocation of the certificate of authority]. However, no penalty will be implemented for a violation not otherwise published without prior notice to the offending bonding company or entity.").

financial management, its unpaid [fi.fa.'s], or its . . . ability to settle the unpaid [fi.fa.'s]."

In its appellee brief, the Sheriff, for the first time, cites to one of his newly-adopted Rules requiring that "[o]utstanding [fi.fa.'s] must be cleared prior to approval of the annual renewal." Rule 2.5 (7). Consequently, also for the first time, the Bondsman asserts in its reply brief that the Sheriff's adoption of Rule 2.5 (7), in and of itself, "demonstrates complete ignorance of the practical realities of the industry [he] regulates, and represents an express and direct conflict with Georgia bonding statutes."

1. Although this case involves a petition for writ of mandamus seeking issuance of an already-expired 2021 license, it is not moot. "[A] case is moot when its resolution would amount to the determination of an abstract question not arising upon existing facts or rights[.]" *Collins v. Lombard Corp.*, 270 Ga. 120, 121 (1) (508 SE2d 653) (1998). But "the term 'moot' must be narrowly construed to exclude from mootness those matters in which there is intrinsically insufficient time to obtain judicial relief for a claim common to an existing class of sufferers," and a case that "contains an issue that is capable of repetition yet evades review" is not moot. (Citation and punctuation omitted.) Id. at 121-122 (1). Significantly, the

9

consequences to the Bondsman do not end with the denial of its 2021 certificate of authority. Rather, the Rules provide that "[n]o [c]ertificate of [a]uthority shall be issued to any professional bonding company or entity whose officer or partners have failed to meet their bonding obligations in Gwinnett County or any other county within the State of Georgia." Rule 4.4. Thus, the Bondsman's right to future certificates of authority and, consequently, his ability to practice his chosen profession in Gwinnett County, turns on the validity of the Sheriff's denial of the 2021 renewal certificate. And yet the short duration between the Sheriff's denial letter and the expiration of the desired certificate has resulted in the inability to fully litigate this issue. Because a decision on the merits will have a direct impact on and important consequences for the Bondsman's rights moving forward, we will not dismiss this appeal as moot. See *Leakey v. Georgia Real Estate Comm.*, 80 Ga. App. 272, 274 (55 SE2d 818) (1949) (reversing the trial court's dismissal of appellant's action as moot because "[i]nextricably bound up in [the Georgia Real Estate Commission's revocation of appellant's real estate broker's license] is the question of the right of the plaintiff to pursue his profession at all unless the judgment of the Commission is reversed"). Compare *Bonner v. Maddox*, 227 Ga. 598, 599 (1) (182 SE2d 122) (1971) (holding that retail business owner's mandamus action seeking issuance of annual

10

liquor license was moot after the expiration of the desired license; nothing to indicate that the denial of liquor license prevented appellants from being store owners or that the regulatory scheme otherwise precluded them from applying for future licenses).

2. As to the merits of the Bondsman's appeal, it is true that the Sheriff is granted broad discretion to review applications and to issue annual certificates of authorization to bonding companies in his or her county. See OCGA §§ 17-6-15 (b) (1), 17-6-50 (b) (4). Nevertheless, "[t]he Sheriff's discretion is not absolute, but is circumscribed by the statutes from which his authority derives." *Pryor Organization, Inc. v. Stewart*, 274 Ga. 487, 488 (1) (554 SE2d 132) (2001). Although a first-time applicant cannot claim entitlement to a certificate of authority even though he or she meets the minimum standards proscribed by the governing statutes, rules, and regulations, the same cannot be said for an established bondsperson seeking renewal of an existing certificate. See id. (noting that if a sheriff denied a professional bondsperson's renewal certificate despite him meeting the minimum qualifications, the sheriff's refusal to issue renewal certificate would amount to an abuse of discretion); *Goldrush II v. City of Marietta*, 267 Ga. 683, 695 (8) (482 SE2d 347) (1997) (citing *Bell v. Burson*, 402 U. S. 535, 538 (91 SCt 1586; 29 LE2d 90) (1971), for the proposition that "[a] license which entitles the holder to operate a business and

11

the continued possession of which 'may become essential in the pursuit of a livelihood' is a [constitutionally] protectable property interest"). Compare *Harrison v. Wigington*, 269 Ga. 388, 388 (1) (497 SE2d 568) (1998) (recognizing that in the case of one applying for a certificate of authorization in the first instance, the "attainment of the status of a professional bondsperson is not itself a civil or political right").

Thus, the resolution of this case turns on whether the Bondsman was in violation of any governing statutes, rules, or regulations. See *Pryor Organization,* 274 Ga. at 488 (1). But not until this appeal did the Sheriff first cite his newly-adopted Rule 2.5 (7) requiring that "[o]utstanding [fi.fa.'s] must be cleared prior to approval of the annual renewal," and the Bondsman contends that the new Rule conflicts with the governing statutory laws regarding a professional bonding company's financial obligations and liability. See generally *Groover v. Johnson Controls World Svc.*, 241 Ga. App. 791, 793 (527 SE2d 639) (2000) (recognizing that agencies with rule-making authority cannot establish rules that subvert statutory law). The Sheriff otherwise failed to present any evidence in support of his assertion that the Bondsman "woefully failed to meet its financial obligations," that its outstanding fi.fa.'s were illustrative of company mismanagement, or that the outstanding fi.fa.'s

12

failed to comply with any other statute, rule or regulation. Because that issue is determinative with respect to the Bondsman's mandamus action, we vacate the grant of summary judgment and remand this case to the trial court for its resolution.

*Judgment vacated and case remanded. Miller, P. J., and Hodges, J., concur.*