330 N.E.2d 92 (1975)
BOARD OF COMMISSIONERS OF HOWARD COUNTY, Indiana, Appellant,
v.
KOKOMO CITY PLAN COMMISSION, Appellee.
No. 675S153.
Supreme Court of Indiana.
June 23, 1975.
*94 Daniel J. Gamble, Fred G. Osborne, Howard County Attys., Kokomo, Karl J. Stipher, Robert J. Bremer, Baker & Daniels, Indianapolis, for appellant.
Kenneth L. Andrews, Kokomo City Atty., Robert S. Whitehead, Kokomo, for appellee.
E. Alonzo Deckard, Danville, for Ass'n of Indiana Counties, Inc., amicus curiae.
DE BRULER, Justice.
The complaint of the Board of Commissioners of Howard County, Indiana (hereinafter referred to as the County) challenged *95 the statute upon which the defendant, Kokomo City Plan Commission (hereinafter referred to as the City) relied in seeking to exercise planning and zoning authority outside its physical boundaries for a distance of two miles. I.C. 1971, XX-X-X-XX, being Burns § 53-734. The complaint contained the legal allegation that the statute, properly construed, required the County to give its consent to an exercise of such jurisdiction in the two mile fringe area and the County had not given consent. It contained constitutional allegations that the statute was void in that it:
(1) authorized exercise of jurisdiction over residents of Howard County in contravention "of the equal protection and due process guaranteed by the 5th and 14th Amendments to the Constitution of the United States", and
(2) discriminated against residents of Howard County "as respects notice, public hearing, due process and equal protection as opposed to those citizens of the State of Indiana residing in counties of a population of excess of 84,000", and
(3) was "an attempt to delegate legislative authority to an administrative appointive body."
The City filed a cross-complaint to enforce the terms of the statute. A stipulation of fact was filed by the parties, and both parties filed motions for summary judgment with legal memoranda.
The trial court denied the County's motion and granted the City's motion, thereby simply enforcing the terms of the statute. In its judgment no mention is made of the County's constitutional claims. The trial court simply refused to consider the County's claim that the statute was invalid.
The County's motion to correct errors posited that the terms of the statute with reference to consent had been erroneously construed and that the statute was,
"unconstitutional for the following reasons:
(a) Said statute does not provide for notice or public hearing;
(b) Said statute is uncertain, vague and indefinite; and
(c) Said statute amounts to an unconstitutional delegation of legislative functions to an administrative body."
The motion was overruled.
The Second District Court of Appeals reversed, with one judge dissenting, holding the statute unconstitutional upon application of Art. 4, § 23, of the Indiana Constitution. (310 N.E.2d 877.) We grant transfer and affirm the judgment of the trial court.
As recognized by the opinion of the Court of Appeals, courts, vested with the authority to adjudge the constitutional validity of statutes, have an affirmative duty to decide the merits of such constitutional claims when they are properly presented and supported. This is so whether the court addressed is a trial court or an appellate court. However, when the constitutional validity of an enactment of the Legislature is properly raised, it simultaneously invokes many rules which restrict and canalize the consideration of the issue. These rules cast a higher and more difficult duty upon the court and the parties. Such rules are intended to insure that the courts will nullify a statute on constitutional grounds only where such result is clearly rational and necessary. When confronted with what appears to be a constitutional claim, a tribunal must first determine for itself that it has the judicial authority to litigate it. Board of Zoning Appeals v. Waintrup (1934), 99 Ind. App. 576, 193 N.E. 701. Likewise as the threshold the court must determine that the party seeking to raise a constitutional claim or defense has shown that he has the requisite standing to do so. Darnell v. Indiana (1912), 226 U.S. 390, 33 S.Ct. 120, 57 L.Ed. *96 267; Lindsley v. Natural Carbonic Gas Co. (1911), 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369; Cheaney v. State (1972), 259 Ind. 138, 285 N.E.2d 265, cert. den'd, 410 U.S. 991, 93 S.Ct. 1516, 36 L.Ed.2d 189 (1973) (for want of standing of the petitioner); Knight & Jillson Co. v. Miller (1909), 172 Ind. 27, 87 N.E. 823; Schmidt v. City of Indianapolis (1907), 168 Ind. 631, 80 N.E. 632; Shigley v. Whitlock (1974), Ind. App., 310 N.E.2d 93.
In Indiana the standing requirement is stated in terms of the requirement of a party to show injury. When appearing in pleadings, constitutional claims must be made in "simple, concise and direct" language. TR. Rule 8(E)(1); TR. Rule 16. Such a claim would necessarily include language which would permit a reasonably competent judge or attorney to identify the constitutional provision allegedly infracted. Prunk v. Indianapolis Redevelopment Commission of the Department of Redevelopment of the City of Indianapolis (1950), 228 Ind. 579, 93 N.E.2d 171.
Upon challenge in court, all statutes are presumptively rational and constitutional, and the party opposing the statute has the burden of overcoming this presumption and making the constitutional defects in the statute clearly apparent. Hanley v. State of Indiana, Indiana Department of Conservation, et al. (1954), 234 Ind. 326, 126 N.E.2d 879; Marion County Election Board v. O'Brien (1960), 241 Ind. 36, 169 N.E.2d 287. Years of usage and acquiescence in a statutory plan or proceeding fortify the presumption of validity. Department of Revenue, Inheritance Tax Division v. Estate of Callaway, Deceased (1953), 232 Ind. 1, 110 N.E.2d 903. Where the constitutional validity of a statute is drawn in issue, it is essential that the party bearing the burden on the issue produce a record before the court which justifies deciding the constitutional issue. Such a record provides the court with the necessary tools to make a rational determination. It includes a statement of the legal test to be applied in determining whether a particular constitutional provision has been violated, or citations of authorities which state that test. And it also includes any factual matter necessary to a proper application of the test. Without essential legal argument and factual matter, the court, particularly in a civil case, is justified in refusing to adjudge whether the statute complies with the commands of the constitutions, for in such case it does not "appear from the record that there is a substantial foundation for the allegation." Ex parte Sweeney (1890), 126 Ind. 583, 587, 27 N.E. 127; Stout v. Hendricks, 228 F. Supp. 568 (S.D.Ind. 1964). In the ordinary case, the party will carry this burden by formally requesting the court to consider relevant facts of which the court may take judicial notice. State v. Griffin (1948), 226 Ind. 279, 79 N.E.2d 537. If the court may not take judicial notice of the necessary factual determinations, such facts must be presented and fully developed in a suitable adversary atmosphere. Whitcomb v. Chavis (1971), 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363; Tinder v. Clarke Auto Co. (1958), 238 Ind. 302, 149 N.E.2d 808; Hardin v. State (1970), 254 Ind. 56, 257 N.E.2d 671; Note, Admission of Extrinsic Evidence in Cases Involving the Validity of Statutes and Ordinances in Indiana, 35 Ind.L.J. 100 (1959). Even if the quality of the litigation is sufficient to support a constitutional determination, such determination will not be made if the case can be disposed of justly on non-constitutional grounds. Passwater v. Winn (1967), 248 Ind. 404, 229 N.E.2d 622; State ex rel. Codding v. Eby, Judge (1944), 223 Ind. 302, 60 N.E.2d 527; Roth v. Local Union # 1460 of Retail Clerks Union (1939), 216 Ind. 363, 24 N.E.2d 280. And in the event an overbroad statute might be found to be unconstitutional as applied to the particular situation at issue, it may be so declared, and in such event the statute is left in effect. Department of Insurance v. Schoonover (1947), 225 Ind. 187, 72 N.E.2d 747; Cotner v. Henry, 394 F.2d 873 (7th Cir. *97 1968), cert. den'd, 393 U.S. 847, 89 S.Ct. 132, 21 L.Ed.2d 118 (1968).
These rules, as they apply to cases which call the constitutional validity of statutes in issue, create a system of adjudication which places a heavy burden on the party making the claim and are intended to insure that any court judgment nullifying a statute on constitutional grounds will be made by a tribunal fully qualified to make such a decision and that that decision will be grounded upon the fullest effort of which a court is capable. By this system, the interests of the State, as determined and concretized in the legislative enactment, will be maximally protected. When the party who is cast in the role in the litigation of defending the statute does not invoke these rules, the court, upon its own responsibility, must use them as its guide in determining a constitutional claim because of the strong public interest in preserving the enactment.
When a claim arises which raises the constitutional validity of a statutory classification under the Equal Protection Clause, or under similar provisions of our State Constitution, the court, after jurisdiction and standing have been established, must decide whether the traditional test or the higher test of equal protection is to be applied. This decision is made upon consideration of three elements: "the character of the classification in question; the individual interests affected by the classification; and the governmental interests asserted in support of the classification." Dunn v. Blumstein (1972), 405 U.S. 330, 335, 92 S.Ct. 995, 999, 31 L.Ed.2d 274; Williams v. Rhodes (1968), 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24. If the traditional test is to be applied, the litigation then focuses upon establishing the legal and factual basis for applying that test. The traditional test of equal protection was summarized in Lindsley v. Natural Carbonic Gas Co., supra:
"1. The equal protection clause ... does not take from the state the power to classify in adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary.
2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality.
3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.
4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." 220 U.S. at 78-79, 31 S.Ct. at 340.
In Royster Guano Co. v. Virginia (1920), 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989, the rule is stated in the following language:
"[T]he classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." 253 U.S. at 415, 40 S.Ct. at 561.
In referring to an equal protection claim raised under Art. 4, §§ 22 and 23, of the Indiana Constitution, this Court stated the same test in Evansville-Vanderburgh Levee Authority District v. Kamp (1960), 240 Ind. 659, 168 N.E.2d 208:
"The constitutional provisions referred to do not prohibit a classification of the objects of legislation so long as there is a relationship between the classification used and the purpose of the act which inheres in the subject matter." 240 Ind. 662, 168 N.E.2d 209.
*98 Under the traditional equal protection test, the challenger must present a case which is sufficient to overcome the general presumption of constitutionality. The same party must present the court with the legal and factual means to determine whether the statutory scheme involving a classification is related to the purpose of the act. The party must put before the court a statement of the purpose and objective of the act for which it contends. The party must identify for the court the statutory characteristics which serve to differentiate the classes. And it must show that there is no rational basis for dissimilarly treating classes having only those differences. This burden may be carried by demonstrating the identity of interest of the two classes which inheres in the subject matter of the legislation.
The stringentness of this burden is demonstrated by the cases. In Doe v. Bolton (1973), 410 U.S. 179, 193-95, 93 S.Ct. 739, 35 L.Ed.2d 201, a state requirement that hospitals performing abortions be accredited by the Joint Commission on Accreditation of Hospitals was found to be unable to withstand constitutional scrutiny. This decision was based upon an extensive record revealing in detail the goals of the JCAH and the particular standards applied by it. Consideration was given to such things as the national acceptance of the JCAH accreditation requirement. Whitcomb v. Chavis, supra, is a striking example of a case in which the party claiming the unconstitutionality of multi-member districts for electing state legislators under the Equal Protection Clause presented many witnesses and reams of statistics and legal research in seeking to sustain its burden. This enormous effort was deemed insufficient to establish what might appear to some to be a simple truth, namely, that the voting strength of identifiable political elements is diluted in multi-member districts.
The statute under equal protection attack by the County in this case places cities in two categories and provides two different procedures for a city's assumption of extra-territorial planning and zoning authority. In the first category are all cities located in counties in which there exists no county master plan and those cities in counties having a county master plan but having less than 84,000 population. In the second category are those cities located in counties having more than 84,000 population and a county master plan. I.C. 1971, XX-X-X-XX, supra. A city in the first category is vested with the sole discretion to decide whether it will exercise such extra-territorial authority. In the second category, a city may not exercise authority outside its boundaries unless approved by ordinance of the county.[1] The record below *99 established that (1) all of the 92 counties in the State fall within the two classes, (2) that Howard County has a population of 83,000. The stipulation of the parties established that the Board of Commissioners is the elected governing body of Howard County and that the Kokomo City Plan Commission is the legal entity concerned with planning and zoning for the City of Kokomo. It established also that the County had enacted a master plan. The remainder of the stipulation dealt with the compliance of the City with the statutory procedures for assuming extra-territorial jurisdiction in counties having less than 84,000 population.
On appeal, the County argues that this statute, with its classification based on county population, infringes upon rights protected by the Fourteenth Amendment, § 1, of the United States Constitution and Art. 1, §§ 1 and 23, and Art. 4, §§ 22 and 23, of the Indiana Constitution. Neither the record of the trial proceeding nor the complete record before this Court establish the standing on the part of the County to challenge the constitutionality of this statute under any of these provisions. None of these provisions of either Constitution guarantee rights to counties.
The Fourteenth Amendment, § 1, reads:
"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
The United States Supreme Court has held that a corporation is not a "citizen" within the meaning of the Privileges and Immunities Clause. E.g., Selover, Bates & Co. v. Walsh (1912), 226 U.S. 112, 33 S.Ct. 69, 57 L.Ed. 146; Orient Ins. Co. v. Daggs (1899), 172 U.S. 557, 19 S.Ct. 281, 43 L.Ed. 552; Paul v. Virginia (1869), 75 U.S. (8 Wall.) 168, 19 L.Ed. 357. A private corporation is, however, a "person" within the scope of the Equal Protection Clause. E.g., Connecticut General Life Ins. Co. v. Johnson (1938), 303 U.S. 77, 58 S.Ct. 436, 82 L.Ed. 673, (See also Justice Black's dissent); Grosjean v. American Press Co. (1936), 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660. In contrast, a municipal corporation, which is merely a subdivision of the State, is not a "person" guaranteed equal protection of the laws, Trenton v. New Jersey (1923), 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937; Newark v. New Jersey (1923), 262 U.S. 192, 43 S.Ct. 539, 67 L.Ed. 943; Williams v. Mayor and City Council of Baltimore (1933), 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015; Bolivar Township Board of *100 Finance of Benton County v. Hawkins (1934), 207 Ind. 171, 191 N.E. 158.
The County has urged that the statute violates Art. 1, § 1, of the Indiana Constitution:
"We Declare, That all men are created equal; that they are endowed by their Creator with certain unalienable rights; that among these are life, liberty and the pursuit of happiness; that all power is inherent in the People; and that all free governments are, and of right ought to be, founded on their authority, and instituted for their peace, safety, and well-being. For the advancement of these ends, the People have, at all times, an indefeasible right to alter and reform their government."
We conceive that provision as guaranteeing civil and political rights to all the human inhabitants of the state and declaring that such private persons are the source of the authority of government. The county has no political or civil rights which this provision would protect against infringement by the state.
The State's Privileges and Immunities Clause, Art. 1, § 23, refers only to "citizens."
"The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."
A municipal corporation, in this case, a county, is not a citizen of Indiana.
The last constitutional argument is based on Art. 4, §§ 22[10] and 23:
"The General Assembly shall not pass local or special laws, in any of the following enumerated cases, that is to say:
* * * * * *
Regulating county and township business;" Art. 4, § 22[10].
"In all the cases enumerated in the preceding Section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State." Art. 4, § 23.
The County argues that the statute is a "special law" and bases its argument on the same ground as its equal protection, and privileges and immunities claims: that there is no rational basis for the classification of cities by county population and that the residents of the contiguous area in counties such as Howard are thereby discriminated against in their political and civil rights. The County makes no claim that it, as a governmental entity, is injured by the statute, nor would such a claim stand up against the power of the State over its subdivisions. When a governmental subdivision of the State receives a command from the Legislature to exercise or to refrain from exercising the police power in a particular manner or in a particular area of governmental concern, that governmental body is powerless to invoke Art. 1, § 23, or Art. 4, §§ 22 and 23, against such a command on its own behalf, or on behalf of its citizens. Of course, any individual or non-governmental corporation subject to the provisions of a statute and adversely affected thereby would have standing to invoke this provision of the State Constitution.
In Indiana, the powers of counties are strictly defined by statute, and the duty of the county to prosecute suits relates solely to those powers. A county is not charged with the responsibility of protecting voting rights. But, in this case, the County Board attempts to represent the interests of individual residents and to vindicate constitutional rights personal to them. In Louisiana v. Texas (1899), 176 U.S. 1, 20 S.Ct. 251, 44 L.Ed. 347, the United States Supreme Court made this same distinction at the state level:
"Inasmuch as the vindication of the freedom of interstate commerce is not *101 committed to the state of Louisiana, and the state is not engaged in such commerce, the cause of action must be regarded, not as involving any infringement of the powers of the state of Louisiana, or any special injury to her property, but as asserting that the state is entitled to seek relief in this way because the matters complained of affect her citizens at large." 176 U.S. at 19, 20 S.Ct. at 257.
As that case and later cases have determined, a state may act as parens patriae on behalf of its citizens. Hawaii v. Standard Oil Co. of California (1972), 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184; Missouri v. Illinois (1900), 180 U.S. 208, 21 S.Ct. 331, 45 L.Ed. 497. However, a county has no sovereign powers and cannot act as parens patriae, asserting the claims of its residents. Since the constitutional provisions have not been construed to assure a county, as a governmental entity, rights equal to those granted other counties, and since a county has not been recognized as a sovereign which may protect its citizens, we find that the County has no standing to raise the issue of the constitutionality of this statute.
Although we do not reach the merits, for instructive purposes only, we would point out that the record considered by the trial court would be clearly insufficient to overcome the general presumption of constitutionality upon application of the traditional equal protection test. No contention or factual matter relating to the purposes and objectives of this statute was presented by the party bearing the burden of proof. No examination of the problems and considerations being dealt with by the legislation was made. The classification here was not sought to be related to the Act's purposes. A court cannot be expected to find that the presumption of constitutionality was overcome in such a factual and legal vacuum.
The County next contends that this statute contains a vague and unconstitutional delegation of legislative power to city plan commissions and is therefore in fatal conflict with the principles of separation of powers, Indiana Constitution, Art. 3, § 1, and United States Constitution, Fourteenth Amendment, § 1. The County would have standing to challenge this statute on these grounds if the Board of Commissioners were charged with the duty of executing and enforcing this law and, because of its vagueness, were seeking an interpretation of the meaning of its provisions as part of a legitimate controversy, Ex Parte France (1911), 176 Ind. 72, 95 N.E. 515. This claim of the County has no such exigent purpose. The purpose here is to void the assignment to the City of the police power to plan and zone in the contiguous area in hopes of keeping that authority for itself. The County may not invoke these provisions of our State and Federal Constitutions for this purpose. City of Trenton v. State of New Jersey, supra.
The County next argues that the statute itself requires the approval of the County Board as a condition to the exercise of extra-territorial zoning and planning by the City. The plain language of the statute creates no such condition.
The judgment of the trial court is affirmed.
GIVAN, C.J., and ARTERBURN and HUNTER, JJ., concur.
PRENTICE, J., dissents without opinion.
NOTES
[1] I.C. 1971, XX-X-X-XX, reads in relevant part as follows:

"Adoption of master plan by city plan commission for limited area outside  Filing with county recorder  Effect of master county plan.  A city plan commission shall adopt a master plan for the development of the city and of such contiguous unincorporated area outside the corporate limits of the city as, in the judgment of the commission, bears reasonable relation to the development of the city as it shall designate. Except as limited by the political subdivision boundaries of other cities or states, or by the boundaries of unincorporated areas subject to the jurisdiction of other city plan commissions, such designated contiguous unincorporated area may include all or any part of the area within two (2) miles from the corporate limits of the city... .
* * * * *
In the event that the county in which any city is located shall now or hereafter have established a county plan commission and such county plan commission shall have prepared, and the board of county commissioners of such county shall have adopted, in accordance with and as provided in this chapter, a master plan and ordinance covering the unincorporated areas of such county, the city plan commission of such city may exercise territorial jurisdiction over the area within the corporate limits of such city only: Provided however, That any city included within this section may continue or establish jurisdiction of the contiguous unincorporated area as described in this section if authorized by ordinance of the board of county commissioners... . Upon the passage of the ordinance by the board of county commissioners and the subsequent acceptance of jurisdiction by the city plan commission, the city plan commission shall exercise the same rights, powers and duties conferred elsewhere in this section exclusively with respect to such contiguous unincorporated area. The jurisdiction of a city plan commission as authorized above may be terminated by ordinance at the discretion of the board of county commissioners, but only if the county has adopted a master plan for such area which is as comprehensive in scope and subject-matter as that in effect by city ordinance: Provided further, That any city located in a county with a population of less than 84,000 according to the last decennial census may, at any time, after filing notice with the county recorder and with the county plan commission (which plan commission shall have adopted in accordance with this chapter, a master plan and ordinance covering the unincorporated areas of such county), exercise or reject territorial jurisdiction over all or part of the area within two (2) miles of the corporate limits of such city and within the county in which it is located, whether or not such city plan commission has exercised such jurisdiction at any previous time. Within sixty (60) days after receipt of such notice, said county plan commission and the board of county commissioners shall cause the county master plan and ordinance to be revised to reflect such decision of the city plan commission exercising the option provided for in this proviso."