# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**RICHARD R. FOX**
**STEVEN A. GUSTAFSON**
The Law Office of Richard R. Fox
New Albany, Indiana

ATTORNEY FOR APPELLEE:

**C. GREGORY FIFER**
Applegate Fifer Pulliam LLC
Jeffersonville, Indiana

**FILED**

Jan 16 2014, 8:44 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FLOYD COUNTY and FLOYD COUNTY PLAN COMMISSION, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 22A05-1303-MI-139 |
| | ) | |
| CITY OF NEW ALBANY and NEW ALBANY CITY PLAN COMMISSION, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE FLOYD CIRCUIT COURT
The Honorable Roger L. Duvall, Special Judge
Cause No. 22C01-1209-MI-1348

January 16, 2014

**OPINION - FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issues

The City of New Albany and the New Albany City Plan Commission (collectively, the "City") sought a declaratory judgment regarding whether it or Floyd County and the Floyd County Plan Commission (collectively, the "County") has zoning jurisdiction over an unincorporated area (the "fringe area") outside the City limits. The trial court granted summary judgment for the City. The County appeals, raising several issues for our review which we consolidate and restate as two: 1) whether the trial court erred in determining as a matter of law that the County is not entitled to claim zoning jurisdiction over the fringe area pursuant to Indiana Code section 36-7-4-205(e), and 2) if the trial court did not err, whether the County's consent is required for the City to exercise jurisdiction pursuant to Indiana Code section 36-7-4-205(f). The City cross-appeals, contending the trial court abused its discretion in striking a supplemental affidavit it submitted after the summary judgment hearing.

Concluding the supplemental affidavit could be, and in fact was, considered by the trial court, and that as a matter of law, the County is not entitled to exercise jurisdiction over the fringe area, nor is it required to consent to the City's exercise of jurisdiction, we affirm.

## Facts and Procedural History

From mid-1965 to 1967, the City and County jointly participated in an area plan commission. In 1968, the County opted out of the joint commission and adopted its own zoning ordinance, which stated that the zoning regulations therein were "made with regard to

2

a comprehensive Master Plan now being made . . . ." Appellant's Appendix at 44. A comprehensive plan[1] was not adopted by the County until 2006, however.

Pursuant to statute, when adopting a comprehensive plan, a municipal plan commission may provide for the development of an unincorporated area up to two miles outside the corporate boundaries of the municipality. See Ind. Code § 36-7-4-205.[2] In 1972, the City Council adopted a resolution of the City Plan Commission establishing as part of the City's comprehensive plan a "Zoning Fringe Area" outside the municipal boundaries, and a map showing the designated fringe area was recorded in September of that year. The City thereafter exercised zoning jurisdiction in the fringe area and provided municipal services, specifically sanitary sewer services, to the fringe area. In 1999, the City amended and replaced its previous comprehensive plan, but continued to assert jurisdiction over the fringe area. In 2001, 2002, and 2007, the City adopted resolutions designating additional unincorporated areas to which it provided sanitary sewer service as part of the fringe area.

As mentioned above, the County adopted a comprehensive plan in 2006, and in 2012, the County Board of Commissioners adopted an ordinance purporting to amend the County's zoning map to terminate the City's zoning jurisdiction over the fringe area and instead include it within the County's jurisdiction. In response to the County ordinance, the City adopted a resolution in February 2013 which "asserts and reaffirms its exclusive territorial zoning jurisdiction over and within the Zoning Fringe Area," which resolution was

---

[1] Sometimes also referred to interchangeably as a "master plan."

[2] At the time the City plan commission designated the fringe area at issue in this appeal, the statute

3

forwarded to the County and recorded. Appellant's App. at 230-33. The City also filed a petition for declaratory judgment seeking a declaration that the County ordinance was invalid as contrary to statute. On February 22, 2013, the City filed a motion for summary judgment. Shortly thereafter, the County filed a motion for summary judgment, designating evidence in support of its own motion and in opposition to the City's motion.[3] A hearing was held on March 8, 2013, and the trial court took the matter under advisement. On March 12, 2013, the City moved for leave to supplement its designated evidence with an additional affidavit regarding the City's provision of building code and enforcement services in the fringe area. The County moved to strike the supplemental affidavit as untimely.[4] On March 18, 2013, the trial court entered an order granting the County's motion to strike the supplemental affidavit, but ultimately granting summary judgment for the City. The order reads in relevant part:

> 15. At the summary judgment hearing, the County raised for the first time its assertion that the City's provision of municipal sanitary sewer service is insufficient to satisfy the provisions of Ind. Code § 36-7-4-205(f), pursuant to 1999 amendment, regarding the necessity of County consent unless the City is providing "municipal services" (*pl.*).
> 16. On March 12, 2013, the City then filed a motion for leave to supplement its designated evidence with the affidavit of City Building Commissioner David Brewer demonstrating that the City was also providing building code inspection and enforcement services at all material times with

was found at Ind. Code § 18-7-5-34 (1972).

[3] The County's motion for summary judgment is file-stamped March 6, 2013, although the certificate of service states it was served on February 28, 2013. See Appellant's App. at 240-41. The actual date it was filed is not of particular significance, but we do note that the City filed a response to the County's motion for summary judgment that is file-stamped March 4, 2013. See id. at 251. Overall, it is important only to note that by apparent agreement of the parties, the timeline for consideration of the summary judgment motions was shortened, which is relevant to our consideration of the City's cross-appeal.

[4] Although the County moved to strike the affidavit and the trial court ruled on that motion, it appears the affidavit was never actually filed, as the City moved for leave to file the affidavit.

4

the Zoning Fringe Area as of the date that the County adopted its ordinance purporting to revoke the City's jurisdiction over the Zoning Fringe Area.

17. The County has moved to strike the Brewer affidavit as untimely, but has not designated any additional evidence that would refute the City's claim that it is also providing building code inspection and enforcement services within the Zoning Fringe Area.

18. The court grants the motion to strike the Brewer affidavit as untimely and not consistent with the agreement of the parties at the hearing.

19. There is no genuine issue of material fact that the City Plan Commission has filed notice with the County Recorder and the County Plan Commission of its exercise of territorial zoning jurisdiction over the Zoning Fringe Area as required by the provisions of Ind. Code § 36-7-4-205(f).

20. There is no genuine issue of material fact that the City has been exercising zoning authority over the Zoning Fringe Area continuously for forty (40) years.

21. The County's claim that the provisions of Ind. Code § 36-7-4-205(e) enable the County to revoke or terminate the City's territorial jurisdiction over the Zoning Fringe Area would vitiate the clear provisions of Ind. Code § 36-7-4-205(f). Statutes must be read *in pari materia* and in harmony with related statutes.

22. The provisions of identified sections of the Indiana Code, both as currently enacted and previous statutes, evidence a clear legislative intent to allow municipalities within counties of a certain size to exercise zoning authority over land adjoin[ing] the municipal boundaries without first obtaining permission of the county executive body where the municipality is also offering municipal services.

23. Municipal services are not defined in Title 36 of the Indiana Code or in case law. The offering of sanitary sewer services is not insignificant when considering the nature and extent of such a capital investment by a municipality. This court will not replace its judgment for that of the Indiana Legislature and limit the zoning authority that has been extended to a municipality by that branch of government by defining the quality and/or quantity of municipal services that must be provided before a municipality may exercise Fringe Zoning Area authority. The City is providing municipal services, if the nature and extent of those services are to be defined or limited, it is better done in the Indiana Legislature.

24. The City is accordingly entitled to the award of summary judgment as a matter of law based on the following:

a. The City has, and continues to, exercise territorial jurisdiction within the Zoning Fringe Area pursuant to the provisions of Ind. Code § 36-7-4-205(a) and (f).

5

b.    The County's consent to the City's exercise of such jurisdiction is not required as the City is providing municipal sanitary sewer service and building code inspection and enforcement services within the Zoning Fringe Area.

IT IS THEREFORE ORDERED ADJUDGED AND DECREED as follows:

A.    [County] Ordinance No. FCO 2012-IX adopted by the Board of Commissioners of the County on September 4, 2012, is hereby declared as void and of no effect to the extent it was intended to terminate or revoke the City's territorial zoning jurisdiction over the Zoning Fringe Area.

B.    The County and the County Plan Commission are ordered to revise the County comprehensive plan and zoning ordinance to reflect the City Plan Commission's decision to exercise territorial zoning jurisdiction within the entirety of the Zoning Fringe Area as required by the provisions of Ind. Code § 36-7-4-205(f) within sixty (60) days following entry of this judgment.

C.    It is further ordered that the County and the County Plan Commission are permanently enjoined from exercising, or attempting to exercise, territorial zoning jurisdiction within the Zoning Fringe Area, as such area may be amended from time-to-time by the City, for so long as (i) the delegation of statutory authority to the City in accordance with the provisions of Ind. Code § 36-7-4-205(f) remains in effect, (ii) the population of Floyd County remains less than that established by the statute to require the County's consent, (iii) the City continues to provide municipal sanitary sewer service, building code inspection and enforcement services, and/or other municipal services within the Zoning Fringe Area, and (iv) the City Plan Commission continues to exercise territorial zoning jurisdiction over the Zoning Fringe Area.

D.    The County's cross-motion for summary judgment is denied in its entirety.

Appellant's App. at 7-10 (citations omitted).  The County now appeals the trial court's grant of summary judgment to the City; the City cross-appeals the trial court's grant of the County's motion to strike the supplemental affidavit they offered.

6

## Discussion and Decision

### I.  The City's Cross-Appeal:  Supplemental Affidavit

We begin by addressing the City's cross-appeal, as the trial court's exclusion of the supplemental affidavit has bearing on the merits of the summary judgment itself.

In moving for leave to file the supplemental affidavit, the City contended that the County raised for the first time at the summary judgment hearing the necessity for the City to provide multiple municipal services to the fringe area.  The trial court in its order also stated that the County raised the insufficiency of the City's provision of municipal services to the fringe area for the first time at the hearing.  However, our review of the record shows that the County's designation of evidence and memorandum in opposition to the City's motion for summary judgment and its cross-motion for summary judgment is primarily addressed to its assertion that "the City does not provide municipal services to the fringe area."  Appellant's App. at 246.  Moreover, the City's response to the County's motion for summary judgment asserts that the County has "seemingly abandon[ed] the County's claim that the adoption of the County's comprehensive plan in 2006 vested it with authority pursuant to Ind. Code § 36-7-4-205(e) to veto or revoke the City's prior exercise of territorial zoning jurisdiction" and "apparently now focuses on the fact that the City provides some municipal services (i.e., municipal sanitary sewers) . . . but not all municipal services (i.e., fire protection, solid waste collection, and police protection)."  Id. at 251-52.  Thus, the County's argument was not newly raised at the hearing.

Nonetheless, Trial Rule 56(E) provides that "[t]he court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits." It is within the trial court's discretion to do so. See Tom-Wat, Inc. v. Fink, 741 N.E.2d 343, 347 (Ind. 2001). Although the County's argument was not sprung on the City at the hearing such that the City had no opportunity to respond, the timeline for summary judgment in this case was accelerated such that it had little opportunity to respond: a hearing was held just days after the County filed its cross-motion for summary judgment. Under these circumstances we would be inclined to say the trial court abused its discretion in striking the affidavit. Cf. Tannehill by Podgorski v. Reddy, 633 N.E.2d 318, 320 (Ind. Ct. App. 1994) (noting that granting permission to file a supplemental affidavit is within the trial court's discretion and the trial court did not err in denying the plaintiff's in part because the plaintiff "had ample opportunity to have timely filed her affidavit . . . ."), trans. denied. Although the trial court's order states that the County's motion to strike the City's affidavit as untimely is granted, the trial court also clearly relied on the content of that affidavit when it concluded in paragraph 24 of its order that the City was entitled to summary judgment in part because the County's consent was not required due to the City's provision of "municipal sanitary sewer service and building code inspection and enforcement services within the Zoning Fringe Area." Appellant's App. at 9.[5] Whether the trial court abused its discretion in striking the

---

[5] Although asserting at the start of the summary judgment hearing that the sanitary sewer service was "the most substantial service that the City has provided in [the fringe] area and it is the sole service we have designated into evidence," transcript at 28, the City's counsel later noted that "we're now issuing building permits, we're issuing zoning approvals, so it [is] a service in addition to, to municipal sanitary sewer service," id. at 52. The notion that the City was providing additional services was therefore offered at the hearing, but the affidavit is the only evidence that it was doing so.

affidavit or merely misspoke and did not intend to strike the affidavit, the result is the same: the supplemental affidavit was properly considered by the trial court and is before this court as well.

## II. The County's Appeal: Summary Judgment

### A. Standard of Review

Summary judgment is proper if the designated evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269-70 (Ind. 2009). We will affirm the trial court's grant of summary judgment if it is sustainable on any theory or basis in the record. Beck v. City of Evansville, 842 N.E.2d 856, 860 (Ind. Ct. App. 2006), trans. denied. The fact that parties have filed cross-motions for summary judgment does not alter our standard of review. T–3 Martinsville, LLC v. U.S. Holding, LLC, 911 N.E.2d 100, 109 (Ind. Ct. App. 2009), trans. denied. Questions of statutory construction are particularly appropriate for resolution by summary judgment, as they are pure questions of law. HDNet LLC v. N. Am. Boxing Council, 972 N.E.2d 920, 922 (Ind. Ct. App. 2012), trans. denied. We review questions of law de novo and owe no deference to the trial court's legal conclusions. Id. The party appealing the grant of summary judgment has the burden of persuading this court on appeal that the trial court's ruling was improper. Bd. of Comm'rs of Hendricks Cnty. v. Town of Plainfield, 909 N.E.2d 480, 485-86 (Ind. Ct. App. 2009).

B. Indiana Code section 36-7-4-205

The parties agree about the underlying facts; they dispute only which section of Indiana Code section 36-7-4-205 is applicable to their situation. We begin by noting the history of the relevant "local planning and zoning" statute concerning territorial authority as between counties and cities: prior to 1971, if a county had a plan commission which had adopted a comprehensive plan covering the unincorporated areas of the county, a city could exercise fringe jurisdiction over contiguous unincorporated areas only with the consent of the county board of commissioners, and once authorized, the city's jurisdiction could thereafter be terminated at the discretion of the county board of commissioners. See Ind. Code § 18-7-5-34 (1971). Effective February 17, 1972, the statute was amended so that consent of the county board of commissioners was not required for a city to exercise fringe jurisdiction if the population of the county was less than 84,000. In such a case, the city could at any time file notice with the county plan commission that it was exercising or rejecting jurisdiction over all or part of the fringe area and the county was required to revise its comprehensive plan to reflect the city's decision within sixty days of receiving the notice. See P.L.141, SEC. 1 (1972), P.L. 271, SEC. 1 (1971). In 1981, the relevant provision was recodified at Indiana Code section 36-7-4-205 but remained largely the same in substance. In 1982, the statute was amended to state that the city could exercise or reject jurisdiction in the fringe area if the county population was less than 95,000. Acts 1982, P.L.1, SEC. 61. In 1999, the statute was amended to allow cities adopting a comprehensive plan after July 1, 1999, to provide for the

10

development of a fringe area if the city was providing municipal services to the fringe area or

if the city obtained the county's approval. P.L. 216-1999, SEC. 1.

In 2011, the statute was amended to its current form, which states in relevant part:

(a) ADVISORY. A municipal plan commission shall adopt a comprehensive plan, as provided for under the 500 series of the advisory planning law, for the development of the municipality. For comprehensive plans adopted after July 1, 1999, if:
> (1) the municipality provides municipal services to the contiguous unincorporated area; or
> (2) the municipal plan commission obtains the approval of the county legislative body of each affected county;

the municipal plan commission may provide in the comprehensive plan for the development of the contiguous unincorporated area, designated by the commission, that is outside the corporate boundaries of the municipality, and that, in the judgment of the commission, bears reasonable relation to the development of the municipality. For purposes of this section, participation of a municipality in a fire protection territory established under IC 36-8-19 that includes unincorporated areas contiguous to the municipality may not be treated as providing municipal services to the contiguous unincorporated areas.

(b) ADVISORY. Except as limited by the boundaries of unincorporated areas subject to the jurisdiction of other municipal plan commissions, an area designated under this section may include any part of the contiguous unincorporated area within two (2) miles from the corporate boundaries of the municipality. . . .

(c) ADVISORY. Before exercising their rights, powers, and duties of the advisory planning law with respect to an area designated under this section, a municipal plan commission must file, with the recorder of the county in which the municipality is located, a description or map defining the limits of that area. If the commission revises the limits, it shall file, with the recorder, a revised description or map defining those revised limits.

* * *

(e) ADVISORY. If the legislative body of a county adopts a comprehensive plan and ordinance covering the unincorporated areas of the county, a municipal plan commission may not exercise jurisdiction, as provided in this section, over any part of that unincorporated area unless it is authorized by ordinance of the legislative body of the county. This ordinance may be initiated by the county legislative body or by petition duly signed and presented to the county auditor by:

11

(1) not less than fifty (50) property owners residing in the area involved in the petition;

(2) the county plan commission; or

(3) the municipal plan commission.

Before final action on the ordinance by the county legislative body, the county plan commission must hold an advertised public hearing as required for other actions of the county plan commission under the advisory planning law. Upon the passage of the ordinance by the county legislative body and the subsequent acceptance of jurisdiction by the municipal plan commission, the municipal plan commission shall exercise the same rights, powers, and duties conferred in this section exclusively with respect to the contiguous unincorporated area. The jurisdiction of a municipal plan commission, as authorized under this subsection, may be terminated by ordinance at the discretion of the legislative body of the county, but only if the county has adopted a comprehensive plan for that area that is as comprehensive in scope and subject matter as that in effect by municipal ordinance.

(f) ADVISORY. Each municipal plan commission in a municipality located in a county having:

(1) a population of less than ninety-five thousand (95,000); and

(2) a county plan commission that has adopted, in accord with the advisory planning law, a comprehensive plan and ordinance covering the unincorporated areas of the county;

may, at any time, after filing notice with the county recorder and the county plan commission, exercise or reject territorial jurisdiction over any part of the area within two (2) miles of the corporate boundaries of that municipality and within that county, whether or not that commission has previously exercised that jurisdiction, if the municipality is providing municipal services to the area. Within sixty (60) days after receipt of that notice, the county plan commission and the county legislative body shall have the county comprehensive plan and ordinance revised to reflect the decision of the municipal plan commission exercising the option provided for in this subsection. If the municipality is not providing municipal services to the area, the municipal plan commission must obtain the approval of the county legislative body of each affected county before exercising jurisdiction.

* * *

Ind. Code § 36-7-4-205 (2011).

"The first step in interpreting a statute is to determine whether the Legislature has spoken clearly and unambiguously on the point in question." City of Carmel v. Steele, 865

12

N.E.2d 612, 618 (Ind. 2007). When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. Id. Clear and unambiguous statutes leave no room for judicial construction. Id. However, when a statute is susceptible to more than one interpretation it is deemed ambiguous and, thus, open to judicial construction. Id. When faced with an ambiguous statute, we apply other well-established rules of statutory construction. Id. One such rule is that our primary goal is to determine, give effect to, and implement the intent of the Legislature. Id. To effectuate legislative intent, we read the sections of an act together in order that no part is rendered meaningless if it can be harmonized with the remainder of the statute. Id. A statute should be examined as a whole, avoiding excessive reliance upon a strict literal meaning or the selective reading of individual words. Mayes v. Second Injury Fund, 888 N.E.2d 773, 776 (Ind. 2008). We presume that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals. Id.

The City contends that subsection (f) applies in this situation because Floyd County has fewer than 95,000 residents as shown by the 2010 census and the City has elected to exercise jurisdiction in the fringe area and has given notice to the County. The County contends that subsection (e) applies because the County has now adopted a comprehensive plan and has adopted an ordinance to terminate the city's jurisdiction over the fringe area.

In Bd. of Comm'rs of Howard Cnty. v. Kokomo City Plan Comm'n, 263 Ind. 282, 330 N.E.2d 92 (1975), our supreme court considered a constitutional challenge to the version of

13

the statute that first established the population classification.  Ultimately, the court held the county had no standing to raise the constitutional claims.  Id. at 295, 330 N.E.2d at 101.  For our purposes, however, it is important to note how the court described the classifications of the statute:

> [It] places cities in two categories and provides two different procedures for a city's assumption of extra-territorial planning and zoning authority.  In the first category are all cities located in counties in which there exists no county master plan and those cities in counties having a county master plan but having less than 84,000 population.  In the second category are those cities located in counties having more than 84,000 population and a county master plan.  A city in the first category is vested with sole discretion to decide whether it will exercise such extraterritorial authority.  In the second category, a city may not exercise authority outside its boundaries unless approved by ordinance of the county.

Id. at 291, 330 N.E.2d at 98 (emphasis added) (citation omitted).  Although the statute has been amended since this case was decided, the amendments have not altered this basic structure:  cities are still placed in two categories:  1) those cities located in counties having a county comprehensive plan covering the fringe area and population less than 95,000 (subsection f), and 2) those cities located in counties having a county comprehensive plan covering the fringe area and, although unstated, population more than 95,000 (subsection e).[6]

 The County's position, that the "statute says, very simply, that once the legislative body of a county adopts a comprehensive plan and ordinance covering the unincorporated areas of the county, a municipal plan commission simply may not continue to exercise jurisdiction over

---

[6] Not having a comprehensive plan as in Bd. of Comm'rs of Howard Cnty., is apparently no longer an option.  See Ind. Code § 36-7-4-501 ("A comprehensive plan shall be approved by resolution in accordance with the 500 series for the promotion of public health, safety, morals, convenience, order, or the general welfare and for the sake of efficiency and economy in the process of development.").

the fringe unless it is authorized to do so by a county ordinance[,]" Brief of the Appellant at 22, fails to take into account the two-category structure of the statute and would render subsection (f) meaningless, because the existence of a county comprehensive plan is a part of both subsections (e) and (f), making the population classification the differentiating factor. We agree with the trial court that the County's position is untenable, and because Floyd County has fewer than 95,000 residents, subsection (f) is the applicable section in this case.

The County also contends that, if subsection (f) is the applicable section, County approval is still required because the City "is not providing municipal services to the area . . ." Ind. Code § 36-7-4-205(f). The City first contends that it is not required to provide municipal services because it was exercising jurisdiction over the fringe area prior to the 1999 amendment adding that requirement. See Brief and Cross-Appeal of the Appellees at 15 (arguing the 1999 amendment "neither operated in any manner to revoke or impair the prior exercise of extraterritorial jurisdiction by any municipality, nor conferred on counties the authority to retroactively revoke extraterritorial zoning jurisdiction previously asserted by municipalities (even where the subsequently requisite 'municipal services' were not then being provided to the area). Instead, the amendment merely established that in any newly proposed exercise of extraterritorial jurisdiction, the municipality would be required to either provide undefined municipal services to the area or obtain the county's prior consent."). We need not decide whether the City is correct in this regard, however, because the City also asserts that it is providing municipal services to the fringe area as required by subsection (f).

As the trial court noted, "municipal services" as a term is not defined by the statute or by caselaw. We begin by acknowledging that section 36-7-4-205(f) uses the term in its plural form. Indiana Code section 1-1-4-1(3), setting forth general rules for the construction of Indiana statutes, states that "[w]ords importing the singular number only may be also applied to the plural of persons and things[,]" but it does not state the opposite is true. In Beneficial Fin. Co. v. Wegmiller Bender Lumber Co., Inc., 402 N.E.2d 41 (Ind. Ct. App. 1980), it was noted that

> [c]ommon usage in the English language does not scrupulously observe a discrete difference between singular and plural word forms, especially when speaking in the abstract, not referring to identified subjects or objects, as in legislation prescribing a general rule for future application. In recognition of this, it is well established, by statute as well as by judicial decision, that legislative terms which are singular in form may apply to multiple subjects or objects and those which are plural in form may apply to single subjects or objects if that is the intended or reasonably understood meaning and effect.

Id. at 49 n.3 (Young, J., dissenting) (quoting Sutherland, Statutes and Statutory Construction § 47.34 (Sands 4th ed. (1973)). However, other statutes within the Indiana Code specifically provide that "[t]he singular number includes the plural and the plural number includes the singular." Ind. Code § 29-1-1-3(b)(1) (rules of construction applying throughout the probate code). See also Ind. Code § 5-10.3-1-8(b) (for the article concerning the Public Employees' Retirement Fund: "The singular form of any noun used in this article includes the plural, and the plural includes the singular, as appropriate."); Ind. Code § 6-6-1.1-104(b) (same, in rules of construction for the chapter on gasoline tax); Ind. Code § 27-7-2-2(g) (same, in definitions for purposes of worker's compensation). No such provision is included within Title 36.

16

Therefore, taking section 36-7-4-205 in its plainest terms, "municipal services" implies that more than one service must be provided.

Other than setting forth the basic proposition that more than one municipal service must be provided by a city by its use of the plural in section 36-7-4-205, the legislature has not indicated the nature, kind, or extent of municipal services it intended a city to provide in order to dispense with county approval of its exercise of jurisdiction over a fringe area. The County directs us to the annexation statutes found in Title 36 which describe two categories of services that an annexing municipality must make a commitment to provide to the annexed area: "noncapital" services, including police protection, fire protection, and street and road maintenance, and services of a "capital improvement nature," including street construction, street lighting, sewer facilities, water facilities, and stormwater drainage facilities. Ind. Code § 36-4-3-13(d)(4), (5). The County contends that this defines "municipal services" for Title 36, and that the term therefore "includes all, or at least substantially all," of these services. Brief of the Appellant at 25. Even assuming those are the "municipal services" with which we are concerned for purposes of section 36-7-4-205, we note that annexation is a highly formalized, legislatively prescribed process, whereas the exercise of extraterritorial jurisdiction over an unincorporated area, though also granted by the legislature, is considerably more informal. We cannot say that the requirements for annexation are directly applicable to this situation.

We can say, though, that the legislature has set a minimum standard for the exercise of extraterritorial jurisdiction by requiring a city to provide "municipal services," plural. But it

has not set a specific standard by requiring the provision of all or of certain municipal services. The County asks this court to set a standard beyond that clearly set in the statute itself, and that is a job reserved to the legislature. The City has been providing sanitary sewer services in the fringe area for decades. That is clearly the largest and most substantial of the services provided to the fringe area by the City, but the evidence in the record and considered by the trial court shows that the City is also providing building code inspection and enforcement services. The County asserts that by adding the requirement that a city provide municipal services, the legislature's intent was to ensure that a municipality has a stake in the fringe area over which it purports to exercise jurisdiction. The provision of sanitary sewer services in this case accomplishes that intent because it is, as the trial court noted, not insignificant due to the capital investment the City has made in offering those services outside its municipal boundaries. We conclude the City meets the requirements of section 36-7-4-205(f) for exercising jurisdiction over the fringe area.

## Conclusion

The City's supplemental affidavit was properly considered by the trial court and is therefore before this court, as well, in considering the summary judgment motions. Because the County has a population of less than 95,000, Indiana Code section 36-7-4-205(f) determines which entity is entitled to exercise jurisdiction over the fringe area, and because the City is providing municipal services to the fringe area, it is entitled to the exercise of jurisdiction without the necessity of County approval. The judgment of the trial court in favor of the City is therefore affirmed.

18

Affirmed.

RILEY, J., and KIRSCH, J., concur.